**UNITED STATES of America,
Appellee,**

v.

**John Herman MELVIN, Appellant.**

**No. 12093.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 9, 1969.

Decided Dec. 2, 1969.

---

3. This issue is now pending before this court in banc in Ehlert v. United States, No. 21,930.

Ernest J. Howard, Greenville, S. C. (Court-appointed counsel) for appellant.

William B. Long, Jr., Asst. U. S. Atty. (Joseph O. Rogers, Jr., U. S. Atty., on the brief) for appellee.

Before SOBELOFF, BRYAN and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

A jury convicted appellant upon a single count indictment charging a violation of 18 U.S.C. § 1462 [1] by knowingly taking and receiving from a common carrier certain obscene materials which had been carried interstate.

Appellant's version is that in September, 1967, he was having difficulties with his wife, and left his Tampa, Florida home. He made his departure in great haste and without luggage in order to prevent his wife from "making off with the car," which was being repaired at Augusta, Georgia. From Augusta he proceeded to Greenville, South Carolina, where he had previously lived, and then to Spartanburg, S. C., where he intended to see a doctor who had been treating him. Since the defendant's absence from Florida was more prolonged than anticipated and since he intended to visit relatives in the North, he attempted to telephone his son to arrange that his clothing be sent him. When he was unable to reach his son, he called a friend and asked him to deliver his message.

The defendant had a number of suitcases at the son's home. Among them were two blue ones containing clothing and a black one containing admittedly obscene material. The testimony is not clear whether the defendant specifically directed that the black suitcase be sent. In any event, it was the black suitcase, and neither of the blue ones, that was sent.

This suitcase was taken to the Greyhound Bus Terminal at Tampa, Florida, and addressed to the defendant at Greenville. At the Tampa terminal, an FBI agent spoke with the receiving clerk, Max Hollis, and saw the black suitcase addressed as above indicated. Shortly thereafter, Hollis allegedly noticed the title "Hungry" on a film in this suitcase. The sighting of the title is said to have become possible when one end of the suitcase "popped open" due to the weight of other luggage piled upon it. (The manner in which this suitcase was said to have opened, disclosing the film, could not be reenacted at the trial.) After this information was relayed to the FBI office in Greenville, a search warrant was sought and obtained. Search of the suitcase disclosed, in addi-

---

1. 18 U.S.C. § 1462 states in pertinent part:

Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

    (a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character; or

\*   \*   \*   \*   \*

Whoever knowingly takes from such express company or other common carrier any matter or thing the carriage of which is herein made unlawful—

Shall be fined not more than $5,000 or imprisoned not more than five years, or both, for the first such offense and shall be fined not more than $10,000 or imprisoned not more than ten years, or both, for each such offense thereafter.

tion to some clothing, 28 reels of obscene movies and six decks of playing cards bearing obscene pictures. The FBI agents took the 28 reels to a studio, where portions of six reels were projected on a screen. They then restored the suitcase and its contents to the possession of the bus company.

Two days later, one Bobby Morgan, a Spartanburg taxi driver, appeared at the Greenville terminal to claim the suitcase. He presented the Greyhound receipt which had been issued at Tampa. The suitcase was delivered to him and thereafter the agents recovered it.

The manner in which Bobby Morgan arrived on the scene was fully explained at the trial. The record discloses that the defendant offered L. V. Pye, a service station operator in Spartanburg, $100 to retrieve the suitcase in Greenville, which is approximately thirty miles from his place. It was Pye who in turn arranged for Bobby Morgan to execute the mission. The defendant, on the witness stand, admitted having from time to time sold film (of an unspecified character) to Pye and to others; also that he had a record of convictions under obscenity laws.

**I**

In support of his challenge to the validity of his conviction, the appellant claims that, as applied to the above facts, the statute under which he was indicted is unconstitutional. For reasons to be stated, we conclude that the statute is not only constitutional on its face, but that under the facts the defendant has brought himself within the condemnation of the statute.

Congress has passed other legislation making illegal the interstate transportation of obscenity by public means or media.[2] The Supreme Court, in affirming a conviction under the statute now in issue,[3] stated that the purpose of this legislation was "to prevent the channels of interstate commerce from being used to disseminate any matter that, in its essential nature, communicates obscene, lewd, lascivious or filthy ideas." United States v. Alpers, 338 U.S. 680, 683, 70 S.Ct. 352, 354, 94 L.Ed. 457 (1950).[4] While from time to time arguments have been advanced questioning the wisdom of laws censoring materials thought to be obscene,[5] it is beyond dispute that Congress has the power to forbid interstate transportation of obscenity.

The case of Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542, decided this year and relied upon by the appellant, is not to the contrary. There the Supreme Court merely struck down a statute as unconstitutional insofar as it made criminal the mere private possession of obscene material in one's own home. The decision did not deal with congressional power to regulate the interstate transportation of obscene material by common carrier.

The evidence adduced by the Government in the instant case stems chiefly from the search of the suitcase. If this evidence is properly in the case, the statute under which defendant was indicted is clearly applicable. We find no merit in the contention that, as applied to the proven facts, the statute is unconstitutional.

**II**

A more substantial contention made by the appellant is that the trial court erred in upholding the sufficiency of the affidavit upon which the search warrant was issued. On this point we agree with appellant.

2. See 18 U.S.C. § 1461 (mail); 18 U.S.C. § 1463 (mail); 18 U.S.C. § 1464 (broadcast).

3. The constitutionality of the statute was not directly questioned.

4. *Also see*, Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498

(1957), which approved 18 U.S.C. § 1461, a section prohibiting obscene transmittals through the mail.

5. *See, e. g.*, Ginzburg v. United States, 383 U.S. 463, 482, 86 S.Ct. 942, 16 L.Ed. 2d 31 (1966), *(dissent of Douglas, J.)* and materials cited therein.

■ A United States Commissioner issued the search warrant upon a supporting affidavit filed by the FBI pursuant to Rule 41(c), Fed.R.Crim.P. This affidavit was the only information from which the Commissioner could determine that probable cause existed to examine the suitcase. The firmly established rule is that "[i]f an affidavit is the only matter presented to the issuing magistrate * * * the warrant must stand or fall solely on the contents of the affidavit." United States v. Roth, 391 F.2d 507, 509 (7th Cir.1967). Likewise, in deciding on· appeal whether probable cause existed for the issuance of a warrant, this court may consider only the information which was before the Commissioner. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Giordenello v. United States, 357 U.S. 480, 486–487, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

■ The affidavit contained a preamble expressing the affiant's belief that the suitcase contained obscene materials and seven paragraphs specifying his reasons for this belief. The first paragraph declared that:

1. Information had been received from a confidential source of *unknown reliability* at Tampa, Florida, on 9–17–67 that a suit case, believed to contain obscene material was being sent via Greyhound Bus Lines from Tampa, Florida to Greenville, South Carolina upon instructions of defendant and addressed to him at Greenville, South Carolina. (Emphasis added.)

Plainly, this paragraph fails since probable cause cannot be predicated upon a

tip of an informer of unknown reliability. Aguilar v. Texas, *supra*; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The District Judge recognized this defect and held the paragraph insufficient.

■ Paragraphs two, three and four are also insufficient.[6] They merely verify that a black suitcase had been delivered to the carrier in Tampa for shipment to Greenville. While these paragraphs do provide a measure of support for the informer's tip that a black suitcase was sent, they relate no fact implying any illegal activity. At best, as the District Judge correctly indicated, this information merely supplied a jurisdictional fact by showing that the suitcase moved in interstate commerce. It tells nothing about the character of the contents.

■ After expressing doubt, the District Judge was persuaded that paragraphs 5 and 6 supported a finding of probable cause. Paragraph 5 recited:

That Max Hollis, an employee of Greyhound Bus Co., Tampa, Florida, reported that he personally observed the suitcase of above described defendant *under circumstances and for purposes unknown to affiant* and reported having seen a portion of the contents of said suitcase, specifically, a motion picture reel and film bearing the title of "Hungry." (Emphasis added.)

Accepting as true the allegedly fortuitous manner in which the reel of the film "Hungry" became visible, the title itself connotes nothing obscene.[7] A film

---

6. Paragraphs 2, 3 and 4 state:

2. That Leon Melvin, son of defendant has been interviewed at Tampa, Florida and has verified having shipped the suit case above described via Greyhound Bus Lines from Tampa, Florida to Greenville, South Carolina on 9–17–67.

3. That personal observations have been made at Greyhound Bus Station in Tampa, Florida by Edward Rothman verifying that Greyhound Bus Company on 9–18–67 had in possession at Tampa, Florida a black two suiter suitcase for

shipment from Tampa, to defendant at Greenville, South Carolina.

4. That through inquiry at Greyhound Bus Company in Tampa, Florida, it has been determined that the above described suit case will arrive at Greyhound Bus Station in Greenville, South Carolina at noon on 9–19–67.

7. This colloquy took place at trial:

Witness: I beg your pardon, Your Honor, I asked him the title of the film.

The Court: Sure you did, but that doesn't say anything standing alone.

(Transcript of Trial, p. 33)

entitled "Hungry" could easily be a documentary concerning hungry children around the world, or almost anything else untainted by obscenity.

In Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), the Supreme Court ruled that probable cause was not established by a police officer's affidavit supplying only the titles of the allegedly obscene motion pictures to be seized and the officer's personal observation of the billboards in front of the theater. The Court went on to say:

> [t]he procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure "designed to focus searchingly on the question of obscenity," [Marcus v. Search Warrants, 367 U.S. 717, 732, 81 S.Ct. 1708, 1716, 6 L.Ed.2d 1127], and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression. Id. at 637, 88 S.Ct. at 2104.

In one respect the *Lee Art* situation is distinguishable from that which confronts us here. In that case, the motion picture was open for viewing by the public and the officer might therefore easily have viewed the film and reported its contents to the justice of the peace. Yet it is significant that the Court was unwilling to find probable cause on the mere "conclusion" of a police officer. The Court's reasoning is not limited to those precise circumstances. In the present case, the affidavit furnished even less information than the affidavit in *Lee Art* concerning the obscene nature of the materials to be seized. The paragraph afforded the Commissioner no aid whatsoever in determining that the material in question was obscene.

██  Paragraph 6 stated:

> That the defendant has been convicted on the said violation of transporting obscene material interstate

and numerous reports *both of known reliability and unknown reliability,* have been received by affiant and other representative (sic) of the FBI indicating that defendant continues to be engaged in the making and distribution of obscene material. (Emphasis added.)

While some weight may normally be given to the fact of prior convictions of similar crimes, this fact standing alone cannot sustain a finding of probable cause.

██  Reports that the affiant is said to have received from sources of both "known reliability and unknown reliability," with no attempt to discriminate between the reliable and the unreliable, also fail to qualify as probable cause. The reports of unknown reliability are insufficient, as in paragraph 1, due to *Aguilar* and *Spinelli*. But even reports from informers of known reliability are an insufficient foundation for probable cause in the absence of further details indicating criminal activity. This is not a captious reading of the paragraph. As Justice Harlan pointed out in *Spinelli*:

> Though the affiant swore that his confidant was "reliable," he offered the magistrate no reason in support of this conclusion.
>
> \*  \*  \*  \*  \*  \*
>
> The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information. \* \* \* In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.

Spinelli v. United States, supra 393 U.S. at 416, 89 S.Ct. at 589.[8]

Paragraph 7 merely reiterates the affiant's belief that the suitcase contained obscene material, based on the previously alleged information.[9] This adds no information justifying a finding of probable cause.

▬ At the hearing of the motion to suppress, the court concluded that there was probable cause, resting its determination upon "the overall picture." We find the paragraphs of the affidavit, read separately or together, insufficient. In a similar situation, the Supreme Court has said that "the 'totality of circumstances' approach taken by the Court of Appeals paints with too broad a brush. Where, as here, the informer's tip is a necessary element in a finding of probable cause, its proper weight must be determined by a more precise analysis." Spinelli v. United States, supra 393 U.S. at 415, 89 S.Ct. at 588.

▬ We realize that the magistrate's determination of probable cause is entitled to great weight, Jones v. United States, 362 U.S. 257, 270, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and that "the magistrate is obligated to render a judgment based upon a common-sense reading of the entire affidavit. United States v. Ventresca, 380 U.S. 102, 108 [85 S.Ct. 741, 745, 13 L.Ed.2d 684] (1965)," Spinelli v. United States, supra 393 U.S. at 415, 89 S.Ct. at 588. But the magistrate must insist upon a modicum of detail if the warrant is to be predicated upon the tip of an inform-

er. This is not present in the instant case.

For the above reasons, the judgment of the District Court must be

Reversed.

ALBERT V. BRYAN, Circuit Judge (dissenting):

Although the reliability of the agent's informant was not previously known to him, the following points supporting his information that the baggage carried contraband were satisfactorily shown to the United States Commissioner before the warrant was issued: the suitcase answering the informant's description was left for shipment on the very carrier and for the very destination stated by the informant; it contained a reel of film; and the consignor of the suitcase was a convict of trafficking in pornographic reels.

Ordinarily a *reel* in a suitcase would not be significant, but in the circumstances here it had a telling connotation. The sight of the reel verified the informant's credibility and left no room for further speculation upon his dependability. The fortifying clues confirmed the earlier tip to the agent, and to ignore them he would be mindless of his obligation. Rather than let them go unnoticed or to seize the reel on his own authority, he dutifully asked for a warrant.

Simply because "Hungry", the title seen on the reel, was not positively known by the agent to be a pornographic reel when it was seen in the suitcase, the search warrant is invalidated. If

---

**8.** The Government asserts that the affidavit stated this kind of detailed description of criminal activity. They argue that there is at least as much detail here as in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), which was cited by the Court in *Spinelli* as an example of the specificity required. Here, however, the only details given in the affidavit revolved around the sending of a black suitcase. In *Draper*, the day that the illegal activity was to take place, the clothes that the defendant would wear, and in general a

detailed description was given that clearly showed that the informer's information was not a fabrication. Clearly, there is a total absence of such detail in our case.

**9.** Paragraph 7 reads:
7. That on the basis of the information heretofore set forth, it is believed that the contents of said suitcase constitutes obscene material being shipped interstate by the defendant in violation of section 1462, Title 18 United States Code.

the agent had that knowledge, he did not need a search warrant. He could rightfully have seized it at once as a fruit of a crime then in progress. In this, the Court is in reality concluding that the agent was not entitled to the warrant because he did not *already* have the information the search would disclose. Thus, in effect, the majority strikes down the warrant because of the agent's want of knowledge of the defendant's *guilt*.

For me these considerations destroy the majority's conclusion. The measure of the right to the warrant is the existence of cause to believe that *probably* the reel offends the law. Draper v. United States, 358 U.S. 307, 313, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959). Proof of the probability and not of the crime is all that is required.

I think the pre-issuance events corroborated the tip to the agent and thus establish the validity of the warrant. This conclusion meets the criteria outlined in *Draper*, supra, 358 U.S. at 313, 79 S.Ct. 329 (1959). It does not foul Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) or Lee Art Theatre, Inc. v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), as the majority now fears. Notably, in the former the suspected contraband had not been first *seen* in the premises to be searched, as in our case, but only believed to be there. That was a serious detriment to reasoning from the facts to the determination of probable cause. The infirmity in *Art Theatre* was the acceptance by the magistrate of what the police officer opined—conclusionary evidence not tainting our case.

To summarize, instantly, a shipment of a pornographic reel was reported to an FBI agent, who verified the time, manner and means of the transportation. Further, a reel was seen in the suspected suitcase, and the owner was known to be a convict of transportation of pornographic reels. It does not tax the concept of probable cause to hold that these facts justified the magistrate in issuing the warrant.

I would sustain the warrant and affirm the conviction.