**UNITED STATES of America,**
**v.**
**Vincent J. MANETTI et al.**
**Crim. A. No. 1984.**

United States District Court,
D. Delaware.
Feb. 24, 1970.

⚷3.6(3)

F. L. Peter Stone, U. S. Atty., Wilmington, Del., for the United States of America.

Joseph J. Longobardi, Jr., Wilmington, Del., for defendants, Vincent J. Manetti, Elizabeth Octavio, Cathy Pritchard and Geraldine Octavio Turner.

Theophilus R. Nix, Wilmington, Del., for defendants, Elnora Jordan and Charles Clark.

## OPINION

LATCHUM, District Judge.

On January 15, 1969, prior to the date the Supreme Court delivered its opinion in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (January 27, 1969), the Commissioner of this district issued eighteen search warrants authorizing a search for records of number and horse bets, monies received from such bets and other gambling paraphernalia claimed to be the fruits, instrumentalities and evidence of violations of 18 U.S.C. § 1952.[1] Five of the warrants were directed to the premises known as 116 W. 8th Street, 913 School Street, 1104 Washington Avenue, 736 W. 12th Street in New Castle, Delaware and 279 New London Road, Newark, Delaware. Eight of the warrants were issued to search the persons of Vincent J. Manetti, Geraldine Turner, Joseph Pullan, Elizabeth Octavio, Cathy Pritchard, Mary Julius, James M. Saunders and Doris Saunders. The remaining five search warrants were directed to five vehicles: a 1962 Oldsmobile, Delaware license 161857, a 1951 Pontiac, Delaware license 22158, a 1964 Chevrolet, Delaware license 118356, a 1966 Chevrolet truck, Delaware license C 33180, and a 1965 Plymouth, Delaware license 182886.

---

1. The relevant portion of the statute reads:

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate * * * commerce * * * with intent to—

   *    *    *    *    *

"(3) otherwise promote, manage, establish, carry on * * * any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling * * * in violation of the laws of the State in which they are committed or of the United States * * *."

All of the search warrants were executed on January 16, 1969 except for those pertaining to Pullan, the 1964 Chevrolet and the 1965 Plymouth. These were returned as "unexecuted." Certain miscellaneous papers, pencils and money were seized under the warrants issued for 116 West 8th Street, 913 School Street, 736 W. 12th Street, New Castle, Delaware and 279 New London Road, Newark, Delaware. No evidence was seized under the other warrants.

On August 12, 1969 the defendants at bar, Vincent Manetti, Charles Clark, Elnora Jordan, Elizabeth Octavio, Cathy Pritchard, James Saunders, Doris Saunders and Geraldine Turner were indicted under 18 U.S.C. § 1952 for traveling between New Castle and Newark, Delaware and Perryville and Elkton, Maryland with the intention of conducting gambling activities proscribed by Delaware law.[2] Motions to suppress the evidence seized under the warrants were filed by defendants Jordan and Clark on September 23, 1969 and by defendants Manetti, Octavio, Pritchard and Turner on September 29, 1969. The moving defendants contend that the warrants were impermissibly issued without probable cause as required by the Fourth Amendment.

The warrants in question were issued on the basis of an affidavit of Special Agent James D. Snyder of the FBI. The Snyder affidavit presents essentially three categories of allegations to support the issuance of the search warrants. Three paragraphs (Nos. 1, 2 and 4) set forth the conclusion that Manetti and seven other individuals are cooperating in running a gambling operation. Paragraph 1 asserts that, based on personal investigation and the reports of reliable informants, "Vincent John Manetti who resides at 116 West 8th Street, New Castle, Delaware, is engaged in illegal gambling activities." Paragraph 2 charges that Manetti has received "number bets and horse bets" from Elnora Jordan, a resident of Elkton, Maryland, Charles L. Clark, a resident of Perryville, Maryland and James M. Saunders and his wife, Doris Hayman Saunders, residents of Newark, Delaware. Paragraph 4 avers that three women, Elizabeth Octavio, Mary Julius and Cathy Pritchard, all residents of New Castle, Delaware, have received number bets and horse bets by telephone "for and on behalf of" Vincent Manetti. The averment of paragraph 1 that Manetti is engaged in illegal gambling activity is based on personal investigation as well as the reports of reliable informants, but there is no description of the investigation, or the circumstances on which the investigator relied in reaching his conclusion that Manetti was engaged in gambling activity. The conclusions in paragraphs 2 and 4 that seven other individuals are participating in gambling activity, in league with Manetti, are based solely on the reports of reliable informants. In each of these paragraphs the circumstances relied on by the informants in reaching their conclusions are not specified, nor are any details relating to the alleged gambling activity provided.

Four other paragraphs of the affidavit (Nos. 5 through 8) give the number of telephone calls made to the residence of Elnora Jordan in Elkton, Maryland during a three month period from the residences of Manetti and three other individuals who, according to the affidavit, were cooperating in the conduct of gambling activity. This information, according to the affiant, was derived from an examination of telephone toll records by the Delaware State Police. The four residences from which telephone calls to the home of Elnora Jordan were made were located in New Castle, Delaware.[3]

Finally, four remaining paragraphs (Nos. 3, 9, 10 and 11) provide information, derived either from personal inves-

---

2. See 11 Del.C. §§ 661, 662, 665 and 670A.

3. The distance between New Castle, Delaware and Elkton, Maryland is approximately 15 miles.

tigation or the reports of reliable informants, concerning travel by Manetti on two occasions to the homes of individuals, who, according to other averments in the affidavit are implicated in the conduct of gambling activity. For example, paragraph 9 states that, based on personal investigation, it is known that on December 24, 1968 Manetti traveled to the residence of James M. Saunders in Newark, Delaware, accompanied by one Joseph Pullan in a 1965 Plymouth registered in Pullan's name; after Manetti and his companion Pullan were observed leaving the Saunders residence, two Negro females then left the Saunders residence and entered a '63 Plymouth Valiant registered in the name of Elnora Jordan and Marion Marie Grinnage, of 115 Bethel Street, Elkton, Maryland. The car was then observed making three stops en route between the Saunders home and the home of Elnora Jordan in Elkton, Maryland.

██ The sufficiency of this affidavit must be measured in light of the guiding principles of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584 (1969). First, if an informant's report is relied on in establishing probable cause, the sufficiency of the informant's report must be considered initially without regard to the other allegations of the affidavit. In this evaluation, two standards must be met. The prior reliability of the informant must be established and second, the circumstances on which the informant based his conclusion as to probable criminal activity must be indicated. As an alternative to stating the circumstances on which the informant relied, the informant's report must "describe the accused's criminal activity in sufficient detail" to permit the magistrate to infer that the informant has obtained his information in a reliable way —that he is relying on something more

substantial than a casual rumor or an accusation based merely on the individual's general reputation.

██ If an informant's report, measured in light of these two standards, is not in itself sufficient to establish probable cause, then "the other allegations which corroborate the information contained in the [informant's] report" should be considered.[4] At this stage as well, however, the standards of reliability and specificity enunciated in *Aguilar*, and clarified in *Spinelli*, "must inform the magistrate's decision."[5] The magistrate must determine whether it can "fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? * * *"[6] This further inquiry must be guided by the basic principle that a magistrate must make an independent determination of the sufficiency of the facts offered to support the finding of probable cause. It is in light of these principles that the quality of the affadivit offered to support the issuance of the search warrants involved in the present case should be considered.

An initial examination of the application indicates that the informants' reports set forth in paragraphs 2 and 4 have "a fundamental place" in this warrant application.[7] The other details concerning travel and long distance phone calls in paragraphs 5, 6, 7, 8, 9 and 10 are relevant to the evaluation of the probability of criminal activity, but such details, without more, certainly would be insufficient to establish probable cause. This Court does not understand the government to contend otherwise. The particular problem presented by the present motions is the extent to which the details of specific activity—travel and long ly—can be used cumulatively to establish probable cause.

---

4.  393 U.S. at 415, 89 S.Ct. at 588.

5.  Ibid.

6.  Ibid.

7.  Cf. Spinelli v. United States, 393 U.S. 410, 414, 89 S.Ct. 584.

distance phone calls—and the informants' conclusions concerning probable criminal activity—each being inadequate to establish probable cause independent-

At the outset, in applying the guidelines in *Spinelli*, it should be noted that the information presented in the warrant application in *Spinelli* is similar in important respects to the information relied on in the present application. In *Spinelli*, the petitioner was convicted of violating 18 U.S.C. § 1952 for traveling from Illinois to St. Louis, Missouri with the intention of conducting gambling activities proscribed by Missouri law. The FBI had kept track of Spinelli on five days during August, 1965. On four of the five days, Spinelli was observed, between 11 a.m. and 12:15 p.m. crossing over one of two bridges leading from East St. Louis, Illinois to St. Louis, Missouri. On four of the five days, Spinelli also was observed parking his car between 3:30 and 4:45 p.m. in the parking lot of an apartment building. On one of these days, Spinelli was seen entering a particular apartment in the building. By checking with the telephone company, the FBI determined that the apartment which Spinelli was observed entering contained two telephones, with two different numbers, (WYdown 4–0029 and WYdown 4–0136) listed under the name of one Grace P. Hagen. The application then stated that "William Spinelli is known to this affiant and to federal law enforcement agents and local law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers." [8] In conclusion, the affiant stated that the FBI "has been informed by a confidential reliable informant that William Spinelli is operating a handbook and accepting wa-

gers and disseminating wagering information by means of the telephones which have been assigned the numbers WYdown 4–0029 and WYdown 4–0136." [9]

The government in *Spinelli* recognized that without the informant's tip—asserting that Spinelli was conducting a gambling operation through the use of two designated telephone numbers—the other allegations of the affidavit would be insufficient to establish probable cause.[10] To meet this admitted deficiency the government in *Spinelli* contended that "the informant's tip gives a suspicious color to the FBI's reports detailing Spinelli's innocent-seeming conduct and that, conversely, the FBI's surveillance corroborates the informant's tip, thereby entitling it to more weight." [11] While recognizing that "the magistrate is obligated to render a judgment based upon a common-sense reading of the entire affidavit" [12] the Court rejected the "totality of circumstances" approach urged by the government, concluding that where "the informer's tip is a necessary element in a finding of probable cause, its proper weight must be determined by a more precise analysis." [13] Because probable cause in the present case cannot be established without consideration of the various informants' reports, the "more precise analysis" found necessary by the Supreme Court in *Spinelli*, therefore, must be applied to the present affidavit.

■ The "more precise analysis" required by the Court in *Spinelli*, as noted above, first requires that "the informant's report" be measured against the dual requirements of *Aguilar*. If the tip is found inadequate under *Aguilar*, then the other allegations which corroborate the information contained in the

8. 393 U.S. at 414, 89 S.Ct. at 588.

9. Ibid.

10. The Court considered the allegation that Spinelli was known to the affiant and to other federal and local law enforcement officers as a gambler and an associate of gamblers "a bald and unilluminating assertion of suspicion * * * entitled

to no weight in appraising the magistrate's decision." 393 U.S. 410, 414, 89 S.Ct. 584, 588, citing Nathanson v. United States, 290 U.S. 41, 46, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

11. 393 U.S. at 415, 89 S.Ct. at 588.

12. Ibid.

13. 393 U.S. at 415, 89 S.Ct. at 588.

hearsay report should be considered. Applying the first level of analysis to the present affidavit, it is clear beyond doubt that the informants' reports (in Paragraphs 1, 2, 4, and 11) are inadequate to meet the dual standards of *Aguilar* and *Spinelli*. The first paragraph of the affidavit states that "it is personally known from investigation and from information provided by an informant whose information has proven to be reliable in the past and from information provided by an informant of the City of New Castle Police Department * * * whose information has proven to be reliable in the past that Vincent John Manetti who resides at 116 West 8th Street, New Castle, Delaware, is engaged in illegal gambling activities." No detail whatever concerning any gambling activity, evidence of any other conduct or any other circumstance uncovered during the investigation or known to any of the alleged informants is offered to support the conclusion—the so-called "personal knowledge" of the affiant—that Manetti is engaged in "illegal gambling activities." The first paragraph may well be only the investigator's conclusion—derived from his review of the evidence of his investigation presented in other parts of the affidavit i.e. the evidence of long distance phone calls and of various visits made by Manetti and others to the homes of individuals suspected of participation in gambling activity. The investigator's conclusion here is also based on his review of the information allegedly provided by reliable informants—although the information is in no way specified. The information provided by the reliable informant which is referred to in paragraph 1 may be only the information of the reliable informant report-

ed in paragraph 11 or it may be information derived from an unreliable source. To credit the personal knowledge of the affiant—if it derived from any of these sources—would clearly be inconsistent with the duty of the magistrate to make an independent evaluation of the circumstances—the specific factual details—which may support a finding of probable cause. The first paragraph—purporting to represent affiant's personal knowledge—adds nothing to the affidavit—either in itself or by reference to other information stated in the affidavit. The first paragraph, therefore, must be completely disregarded by this Court in evaluating the sufficiency of the affidavit.[14]

    Paragraphs 2 and 4 of the affidavit may at first seem to suffer from the same defect as paragraph 1. Paragraph 2 asserts that, according to a tip from a previously reliable informant, Manetti has received "numbers bets and horse bets" from four different individuals at designated addresses in Elkton and Perryville, Maryland, and Newark, Delaware. Paragraph 4 states that, on the basis of a report from an informant who in the past has proved reliable to the New Castle Police Department, three named women at designated addresses in New Castle, Delaware have received "number bets and horse bets by telephone for and on behalf of Vincent John Manetti." The only additional information provided by these two paragraphs (and absent from paragraph 1) is the conclusion that seven different individuals are said to be associated with Manetti in the conduct of gambling operations:—four in placing bets with Manetti and three others in receiving bets on his behalf. These informants' reports are

14. The Supreme Court in *Spinelli* found it necessary to totally disregard the third paragraph of the affidavit which stated that "William Spinelli is known to this affiant and to federal law enforcement agents and local law enforcement agents as a bookmaker, an associate of bookmakers, a gambler, and an associate of gamblers." To this Court, the conclu-

sion of the affiant in paragraph 1 of the present affidavit is no more entitled to consideration than "the bald and uilluminating assertion of suspicion" which the Supreme Court in *Spinelli* concluded was "entitled to no weight" in appraising the magistrate's decision. Cf. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11 (1933).

most insubstantial and, without adequate corroboration through independent investigation, are clearly inadequate to establish probable cause. Yet, the information of association provided by the informants in paragraphs 2 and 4 is not "so insubstantial that it could not properly have counted in the magistrate's determination." [15] This is so because the frequency, duration, and nature of contact between individuals in a particular group are specific details which can be evaluated by the Court in determining whether the bare suspicion engendered by the informants' reports linking these individuals together in some activity has ripened into a sufficient indication of criminal activity to meet the Fourth Amendment standard of probable cause.

The allegations of the affidavit indicate that independent investigation corroborated only one detail of the informants' reports concerning the use of a particular automobile by Manetti. According to paragraph 11, a previously reliable informant reported that Manetti had used four different vehicles, with specified license plates, to travel to the homes of Elnora Jordan, Charles Clark and James Saunders. On November 21, 1968 the affiant observed that Manetti, in the company of Geraldine Turner, nee Octavio, traveled to the homes of these three individuals, Jordan, Clark and Saunders, in a 1964 white Chevrolet identified in the informant's report. (Par. 11.) Other specific trips in this automobile or in any of the other three vehicles cited by the informant were not confirmed by independent investigation. Paragraph 3 states that "it is personally known from investigation" that Manetti traveled to the residences of Jordan, Saunders and Clark, but it does not disclose any detail concerning the vehicles used or the frequency and manner of travel to the homes of these individuals. These deficiencies render the statements regarding the automobiles and travel of minimal probative value either to corroborate the informant's report in paragraph 11 or to indicate that the informant had personal knowledge of the criminal conduct stated.

■ The same is true with respect to the telephone calls. The record of 39 calls from the Manetti residence and 95 calls from the residence of Cathy Pritchard to the home of Elnora Jordan over a three-month period is not inherently suspicious though it is a factor to be considered in weighing the over-all sufficiency of the affidavit. This record of telephone calls takes on an aura of suspicion only by virtue of the informants' conclusions that these individuals were engaged in gambling activities. The government seeks to use this bare accusation of the informants' reports to color facts which are not inherently suspicious in order to establish probable cause. To so credit the informants' accusations—without regard to the relevance of the factual detail corroborated to establishing the informant's reliability—would be to adopt the "totality of circumstances" approach which the Supreme Court in *Spinelli* rejected in favor of a "more precise" evaluation of the informant's tip and the information corroborated by independent investigation.

■ This Court has attempted to apply to the present affidavit the "more precise analysis" required by *Spinelli*. That analysis requires that the details corroborated must be sufficiently probative and substantial to permit the inference that the informant had personal or other reliable knowledge of the criminal conduct described.[16] Weighing the affi-

---

15. 393 U.S. at 418, 89 S.Ct. at 590.

16. The degree of detail corroborated in Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) and the inference concerning the reliability of the informant thereby made possible, provide a relevant standard of compari-son. As the Court noted in *Spinelli*: "Independent police work [in *Draper*] corroborated much more than one small detail that had been provided by the informant. There, the police, upon meeting the inbound Denver train on the second morning specified by informer Hereford, saw a man whose dress cor-

davit, including the record of phone calls, and the corroboration of the insignificant detail of the use of a particular automobile and limited travel by Manetti found in the informants' reports, this Court is not persuaded that the informants' description of criminal conduct was based on personal knowledge or other reliable knowledge as required by *Aguilar* and *Spinelli*.

Accordingly, no probable cause existed for issuing the search warrants, the searches made thereunder are void and the items seized should be suppressed as evidence and returned.

An order in accordance with this Opinion will be entered.

See also D.C., 304 F.Supp. 1052.

responded precisely to Hereford's detailed description. It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established." 393 U.S. 410, 417–418, 89 S.Ct. 584, 590.