UNITED STATES of America, Appellee,

v.

James Luther COBB, Sr., Appellant.

No. 13725.

United States Court of Appeals,
Fourth Circuit.

Argued May 8, 1970.

Decided Sept. 16, 1970.

Norman B. Kellum, Jr., Beaman & Kellum, New Bern, N. C., for appellant.

Richard J. Bryan, Asst. U. S. Atty. (Warren H. Coolidge, U. S. Atty. on brief), Raleigh, N. C. for appellee.

Before BRYAN and CRAVEN, Circuit Judges, and RUSSELL, District Judge.

DONALD RUSSELL, District Judge:

Convicted of a violation of Section 5604, 26 U.S.C. (i. e., transportation and possession of untaxed distilled spirits), the defendant appeals, assigning error in the District Court in failing to sustain his motion to suppress evidence.

The facts, so far as pertinent to the motion to suppress, are undisputed. Two State Alcoholic Beverage Control Agents observed the defendant drive a car registered in the name of Robert T. McKnight into Jasamine Alley in Wilmington, North Carolina, and stop in front of a residence in such Alley. The defendant got out of the car, went back "to the trunk of the car" but, noting the officers, as they assumed, turned and entered a house in the Alley.[1] They immediately sought assistance for the purpose of maintaining surveillance of the

---

1. This action of the defendant was not referred to in the affidavit on which the subsequent search warrant was issued nor was there any testimony in this regard submitted to the issuing magistrate. It cannot be used to justify the issuance of the search warrant, which must rest exclusively on the facts stated in the supporting affidavit. Aguilar v. Texas (1964) 378 U.S. 108, 109, n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723; United States v. Melvin (4th Cir. 1969) 419 F.2d 136, 140; United States v. Roth (7th Cir. 1967) 391 F.2d 507, 509.

defendant. With this added assistance, the Alley was "completely covered" by the officers. In the meantime, the officers requested by radiophone a warrant to search the car driven by the defendant. Told that the defendant had been seen about a block and a half away, they overtook the defendant and placed him in custody, advising him they were taking him "back to the car" and that they were "going to get a search warrant and wanted to search his car". The officers with the defendant returned to the car and, when the search warrant came, they "searched the car and found the liquor", which formed the basis of the charge against the defendant.

The search warrant itself was identified as being issued in a prosecution against Robert T. McKnight, the owner of the car. The affidavit, on the basis of which the search warrant was issued, however, referred exclusively to the defendant. He manifestly was the person against whom the search was directed and whose reputation alone formed the basis for a search of the vehicle. Thus, the affidavit referred to the circumstance that the car proposed to be searched had been seen in the defendant's yard and that, based on information received from "reliable sources that wish to remain confidential", it was understood "that Jake Cobb uses(d) this vehicle from time to time to transport nontaxpaid liquor into the Wilmington area". The affidavit identified the defendant as having "a long record for making and transporting nontaxpaid liquor". On that basis, the affidavit concludes with the statement that the affiant and his associated officers feel "that there is a strong possibility that this vehicle now contains nontaxpaid liquor."

■ The motion to suppress was not made until, during the examination of the arresting officers at the trial, evidence of the search was offered. At that point, the defendant moved to suppress.[2] In disposing of the motion, the District Court did not rule on the sufficiency of the affidavit supporting the search warrant; it held that, since the defendant had made no showing of either a proprietary or possessory interest in the vehicle searched, he was without standing to challenge the validity of the search. We disagree and reverse.

■ It should be observed at the outset that the Government does not seriously contend that the affidavit supporting the issuance of the search warrant met the test of Aguilar v. Texas (1964) 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States (1969) 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. In fact, its brief in this Court makes no effort to sustain the search warrant and begins by "Assuming, *arguendo*" the insufficiency of the affidavit. Nor was the sufficiency of the affidavit or the search warrant issued thereon seriously pressed on oral argument. The reluctance of the Government to urge the sufficiency of the affidavit is understandable: The affidavit was plainly insufficient under the rule stated in *Spinelli*.

It will be noted that, in summarizing his supporting facts, the affiant, G. E. McLean, did not assert that such facts constituted "probable cause" but merely "a strong possibility" that the defendant had in his possession and was engaged in transporting untaxed spirits.[3] In short, by his own statement, the affiant affirmed merely a suspicion or conjecture. That he properly evaluated his own facts seems obvious. The only two

---

2. Rule 41(e), Federal Rules of Criminal Procedure contemplates that a motion to suppress should be made prior to trial. The Rule, however, provides that the trial court "in its discretion may entertain the motion at the trial * * *." By considering and ruling on the motion, the District Court exercised the discretion given

it under the Rule and the motion was properly before it, though first made at the trial. Glisson v. United States (5th Cir. 1969) 406 F.2d 423, 425.

3. Cf., Saville v. O'Brien (1st Cir. 1969) 420 F.2d 347, 351.

facts alleged in his affidavit were that the defendant "has a long record for making and transporting nontaxpaid liquor" and, based on "information received from reliable sources that wish to remain confidential", the defendant "uses this vehicle from time to time to transport nontaxpaid liquor". There is nothing given to support the claim of a "long record" of law violations on the part of the defendant. No arrests or convictions are cited. For all the affidavit shows, this conclusion rests wholly on rumor and hearsay, verified by no specific instances.[4] Again, the statement that the defendant "uses" the vehicle proposed to be searched "from time to time" to transport illegal liquor rests on information supplied by "reliable sources" whose reliability was not vouchsafed in the affidavit by a single circumstance.[5] Nor does the affidavit indicate how the "reliable sources" obtained their information, if any, upon which they rested their statement of fact.[6] Equally silent is the affidavit as to why on this occasion the officers felt that the defendant had in his possession untaxed liquor. Actually this affidavit would, if sustained, justify the search of any automobile being driven at any time by the defendant. Mere "possibility", "conjecture" or "suspicion" is insufficient to support the issuance of a search

warrant; and that is the utmost that can be claimed for the affidavit in this case.[7]

The government, however, contends strenuously—and this is really the burden of its argument on appeal—that, whatever the insufficiency of the affidavit, the defendant, not having made claim to either a proprietary or a possessory interest in the vehicle, has no standing to attack the validity of the search.

■ In Jones v. United States (1960) 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697, the Court, in construing Rule 41(e) which gives to any "person aggrieved by an unlawful search and seizure" the right to move to suppress evidence thereby secured, held that, "In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, *one against whom the search was directed*, as distinguished from one who claims prejudice only through the use of evidence gathered *as a consequence of a search or seizure directed at someone else*." (Italice added) 362 U.S. at p. 261, 80 S.Ct. at p. 731. The distinction is thus made between the situation where the person moving to suppress was the person against whom the search was directed and that which aris-

4. See, United States v. Melvin (4th Cir. 1969) 419 F.2d 136, 141: "While some weight may normally be given to the fact of prior convictions of similar crimes, this fact standing alone cannot sustain a finding of probable cause" for the issuance of a search warrant.

See, also, United States v. Manetti (D.C.Del.1970) 309 F.Supp. 174, 179; United States ex rel. Metze v. New York (D.C.N.Y.1969) 303 F.Supp. 1359, 1364.

5. Cf., Spinelli v. United States, *supra*: "Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion."

See, also, United States v. Melvin, *supra*.

6. See, United States v. Flanagan (5th Cir. 1970) 423 F.2d 745, 747: "If an affiant relies on the observations of an informant, he must reveal to the magistrate circum-

stances from which he concluded that the informer was reliable. In addition, if the affiant relies on conclusions drawn by the informer, he must relate the circumstances upon which the informer based his conclusions. Otherwise the inferences drawn from the facts are not drawn by a neutral and detached magistrate, as the Fourth Amendment requires."

See, also, Von Utter v. Tulloch (D.C. Mass.1969) 304 F.Supp. 1055, 1057.

Cf., United States v. Bridges (8th Cir. 1969) 419 F.2d 963, 966, where the informants based their information on actual purchases of narcotics made by them.

7. United States v. Flanagan, *supra*; United States v. Whitlow (7th Cir. 1964) 339 F.2d 975, 980; United States v. Thompson (3d Cir. 1970) 420 F.2d 536, 539. In the latter case, the Court said: " * * * probable cause means more than a bare suspicion * * *."

es when the challenged evidence was procured "as a consequence of a search or seizure directed against someone else." In the first case, the person against whom the search was directed has standing to attack the validity of the search;[8] in the second, he has not.[9]

 Beyond doubt, the defendant in this case fell within the first class. He was the person "against whom the search was directed". The search was manifestly not "directed at someone else". The only basis claimed for the search was the alleged reputation of the defendant. He was the one whose possession of the car excited the suspicion of the arresting officers and prompted them to follow it. He was the one under surveillance as the officers awaited the search warrant. He was the one taken into custody and brought back to the car preparatory to the search. He was the one who was immediately arrested, advised of his rights, and taken to jail, when the search was made. The officers assumed throughout that the car was in the possession of the defendant and requested him to return with them to the car, referring to the car as "his car". They repeated this same phrase as they undertook the search. From beginning to end, the defendant was the object of the search and his possession of the vehicle to be searched was accepted and declared by the searching officers.

Moreover, *Jones* established the rule that one charged with a crime of which possession is an essential element has standing to challenge the validity of a search, without regard to whether he asserts an invasion of his privacy because of either a proprietary or possessory interest in the premises or vehicle searched.[10] This rule was reaffirmed in Simmons v. United States (1968) 390 U.S. 377, 390, 88 S.Ct. 967, 974, 19 L. Ed.2d 1247. There the Court put it "that when, as in *Jones*, possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence." And such rule has been consistently applied.

In Velasquez v. Rhay (9th Cir. 1969) 408 F.2d 9, 10, the Court bluntly put it:

"The district court held that petitioner lacked standing to challenge the constitutionality of a search and seizure since he denied that the premises searched were his. Petitioner was convicted of possession of the property seized in the search, and his standing is therefore established by Jones v. United States, 362 U.S. 257, 263–264, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)."

In Williams v. United States (5th Cir. 1969) 412 F.2d 729, the defendant had moved to suppress evidence resulting from a search of an automobile of which, at the time of the search, he denied ownership or even knowledge. The Court held that "the fact that his possession of the stolen automobile was the basis for the prosecution, suffices to confer standing upon him to maintain the illegality of the search."

---

8. See, Baker v. United States (D.C.Cir. 1968) 401 F.2d 958, 982–983.

9. United States v. Graham (6th Cir. 1968) 391 F.2d 439, and Stassi v. United States (5th Cir. 1969) 410 F.2d 946, illustrate the second class and are the very converse of this case. Both involved searches that were concededly not directed at the defendant moving to suppress.

10. Actually, the Supreme Court, in establishing its rule of standing under the Fourth Amendment, has abandoned reliance on technical common law concepts of private property and bases its rule on an "interest in privacy despite the complete absence of a property claim * * *," finding that "the principal object of the Fourth Amendment is the protection of privacy rather than property". Warden, Maryland Penitentiary v. Hayden (1966) 387 U.S. 294, 304–305, 87 S.Ct. 1642, 1648, 18 L.Ed.2d 782; United States v. Cowan (2d Cir. 1968) 396 F.2d 83, 86.

In Colosimo v. Perini (6th Cir. 1969) 415 F.2d 804, the persons moving to suppress evidence resulting from a search of a vehicle, the ownership or possession of which they seemingly did not assert, were held to have "standing to object to the search" on the basis of *Jones*.

United States v. Allsenberrie (7th Cir. 1970) 424 F.2d 1209, is quite similar to this case. There, a warrant was secured for the search of a certain establishment owned by one Chveja. The purpose of the search, as set forth in the supporting affidavit, was to determine whether the defendant Allsenberrie had secretly stored certain articles in the establishment. As here, the search was not directed against the one owning or in possession of the establishment; it was directed against one who, so far as the record showed, had neither possessory nor permissive right to use the establishment for the storage of the stolen articles. It was contended by the Government that the defendant had no standing to attack the search. Unlike the position taken here, the Government did not press the argument that *Jones* had been overruled but sought to distinguish *Jones* "by limiting its application only to cases where the sole basis of the offense, as in the cases of narcotics, is possession". Relying on the language in *Simmons*, which defined *Jones* as embracing any case where "possession of the seized evidence is itself an essential element of the offense", the Court rejected "such a very limited application of *Jones*" and concluded "that the defendant should have been held to have the proper standing to challenge the reasonableness of the search." [11]

The Government concedes that "for all practical purposes this is a crime by possession case", but it argues that the rule in *Jones*, which establishes that where the possession is an essential element in the offense the defendant is relieved of the obligation to establish standing by proving a proprietary or possessory right in either the property seized or the vehicle searched, has been overruled "*sub silentio*" by *Simmons*. More specifically, the Government contends that *Jones* was predicated upon the unfairness of requiring a defendant to admit possession, the equivalent of a confession of guilt, as an essential basis for his motion to suppress, and that *Simmons* removed such unfairness by establishing that an admission of possession upon hearing of the motion was inadmissible on the subsequent trial of the substantive offense. Accordingly, by this argument, *Simmons* removed the reason for the rule in *Jones* and this, the Government urges, inferentially overruled it.

This argument is untenable for several reasons. First, *Simmons* gives no support to any idea that the Court was weakening in any particular the rule in *Jones*, much less overruling it "*sub silentio*". On the contrary, as shown in the excerpt quoted *supra* from *Simmons*, the Court restated and reaffirmed the rule in *Jones* so far as it applied to crimes in which possession was an essential element. Secondly, *Simmons* was not concerned with a possessory crime: that situation had already been disposed of in *Jones* by giving one charged with such crime standing without requiring as a predicate for his motion a claim of a proprietary or possessory interest in either the vehicle searched or the property seized. Thus, in *Simmons*, the Court said, in marking out the issue before it, that, "The dilemma faced by defendants like Garrett is most extreme in prosecutions for possessory crimes, for then the testimony required for standing itself proves an element of the offense. We eliminated that Hobson's choice in Jones v. United States, *supra*, by relaxing the standing requirements. This

---

11. See, also, to the effect that it is only necessary that possession be an "essential element of the offense" as distinguished from the sole basis, Niro v. United States (1st Cir. 1968) 388 F.2d 535, 537; Baker v. United States (D.C.Cir. 1968) 401 F.2d 958, 982, note 106; compare, however, United States v. Konigsberg (3d Cir. 1964) 336 F.2d 844, 847.

Court has never considered squarely the question whether defendants charged with non-possessory crimes, like Garrett, are entitled to be relieved of their dilemma entirely. It was to this latter question that *Simmons* directed itself, not the right of one charged, as this defendant was, with a possessory crime. See, also, Mancusi v. De Forte (1968) 392 U.S. 364, 368, n. 5, 88 S.Ct. 2120, 20 L. Ed.2d 1154. Finally, *Jones* was not based simply on the reasoning that it was impermissible that the defendant be required to confess an essential element of guilt in order to invoke his constitutional rights under the Fourth Amendment. The Court stated that it was persuaded to its conclusion in favor of a right to challenge the search without "a preliminary showing of an interest in the premises searched or the property seized" in a possessory crime by the consideration that "to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. * * * It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the Government." 362 U.S., pp. 263–264, 80 S.Ct., p. 732. That reasoning applies squarely to this case, where the Government seeks to use the fruits of the search to convict the defendant but would deny him standing to challenge the search. *Jones* proceeded on the basis that such contradictory positions by the Government are not to be allowed.

There is accordingly no merit in the contention by the Government that *Simmons* altered the rule in *Jones* which gives the defendant here standing to attack the search, despite his failure to assert a proprietary or possessory interest in either the vehicle searched or the contraband seized.[12]

For the above reasons, the judgment of the District Court must be

Reversed.

---

12. It is the view of many legal commentators that any person against whom the fruit of an illegal search is offered in evidence should have standing to challenge the search. See A.L.I. Model Code of Pre-Arraignment Procedure, Tentative Draft No. 3, pp. 103–4 where the problem of standing is described as "productive of aridly technical discussion and decision." The Court referred to such contention in *Simmons*: "It has been suggested that the adoption of a 'police-deterrent' rationale for the exclusionary rule, see Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, logically dictates that a defendant should be able to object to the admission against him of *any* unconstitutionally seized evidence. See Comment, Standing to Object to an Unreasonable Search and Seizure, 34 U. Chi.L.Rev. 342 (1967); Note, Standing to Object to an Unlawful Search and Seizure, 1965 Wash.U.L.Q. 488. However, that argument is not advanced in this case, and we do not consider it." 390 U.S. 377, 390, n. 12, 88 S.Ct. 967, 974, n. 12. To what extent Alderman v. United States (1968) 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176, may have answered the question left unanswered in *Simmons* is arguable. See 38 U. of Cinn. L.Rev. 691, 693 (1969).