J. Irwin Shapiro, J.
By personal affirmation of the District Attorney of Queens County, supported by an affidavit of a detective of the Special Investigating Unit of the Narcotics Bureau containing the details hereinafter set forth, the District Attorney has applied for an order authorizing the interception of telephone communications over a specified telephone for a period of 20 days.
In Berger v. New York (388 U. S. 41) the Supreme Court of the United States held that the New York statute governing eavesdropping and interception of telephone communications (Code Crim. Pro., § 813-a) is unconstitutional on its face (pp. 58, 63). The question posed by this application for a wiretap order is whether, absent any wiretapping and eavesdropping statute, a wiretap order may nevertheless be granted by this court.
Berger held section 813-a of the Code of Criminal Procedure unconstitutional because under it a wiretap or eavesdropping order could be granted upon affirmation that “ there is reasonable ground to believe that evidence of crime may thus be obtained ’ ’ and it therefore collided with the Fourth Amendment requirement of probable cause to justify the issuance of a *164 privacy-invading warrant because there was no provision mandating a showing that any particular offense had been or was being committed and because the statute, in its “ broad sweep,” was defective in failing to require, among other things, a particular description of the conversations sought. (Berger, supra, pp. 54-56.) But Berger did not purport to bar all wiretap or eavesdropping orders as unconstitutional, for, though declaring section 813-a to be unconstitutional, the Supreme Court reaffirmed its holding in Osborn v. United States (385 U. S. 323) that an order permitting eavesdropping granted on an affidavit setting out in detail the conversations with a particular person evidencing the commission of a crime, proof of which was being sought, and containing other “ discriminate circumstances ’ ’ which fully met the ‘ ‘ requirement of particularity ’ ’ of the Fourth Amendment could constitutionally issue, (pp. 56-57, 63). In holding the New York statute constitutionally offensive, the court specified seven factors, a showing of which is deemed essential to justify the issuance of a valid wiretap order which would conform with the requirements of the Fourth Amendment (pp. 58-60). They are:
1. A showing of probable canse to believe that a particular offense has been or is being committed ;
2. A particular description of the property or conversations sought;
3. A limitation of the wiretapping or eavesdropping to a period of time shown to be reasonably necessary under the circumstances;
4. A requirement that if the order is to be extended there be not only a showing that such extension is “in the public interest,” but that there is “present probable cause for the continuance of the eavesdrop.”;
5. A requirement that the wiretapping or eavesdropping be discontinued once the conversation sought is seized, even though it be prior to the expiration date of the order;
6. A requirement of notice as is the case with conventional warrants;
7. A requirement for a return of the warrant. None of the foregoing is contained in the New York statute and the court summarized these constitutional gaps by saying (p. 60): “In short, the statute’s blanket grant of permission to eavesdrop is without adequate judicial supervision or protective procedures.” In answer to the rhetorical postulate that “ neither a warrant nor a statute authorizing eavesdropping can be drawn so as to meet the Fourth Amendment’s requirements,” (p. 63) *165 the court pointed out that it had in the past, under specified conditions and circumstances, sustained the use of eavesdropping devices where the affirmation or affidavit submitted in support thereof complied with the requirements of the Fourth Amendment.
With this analysis of Berger I return to the question posed at the outset, namely: Does this court have the authority to issue a wiretap order absent a statute granting it such right and delineating the boundaries thereof?
Section 813-a of the Code of Criminal Procedure was originally enacted by chapter 924 of the Laws of 1942. The purpose of the enactment was to implement section 12 of article I of the New York State Constitution which became effective on January 1, 1939. (Art. XX, § 1.) That constitutional provision, so far as here pertinent, reads: “ The right of the people to be secure against unreasonable interception of telephone * * * communications shall not be violated, and ex parte orders or warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained, and identifying the particular means of communication, and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof.”
The absence of a statute implementing this constitutional provision does not render it sterile and incapable of fulfilling its specified functions. Generally speaking, provisions in a constitution are deemed self-executing. (People v. Carroll, 3 N Y 2d 686, 691-692; People v. Duchin, 16 A D 2d 483, affd. 12 N Y 2d 351; People v. Diaz, 10 A D 2d 80, 83, affd. 8 N Y 2d 1061.) In the Carroll case the court said (p. 691): “ Whereas initially the presumption was that provisions in a Constitution were merely general directions and that legislation was necessary to effectuate them, it is now presumed that constitutional provisions are self-executing (State ex rel. Russell v. Bliss, 156 Ohio St. 147; Morgan v. Board of Supervisors, 67 Ariz. 133; State ex rel. Noe v. Knop, 190 So. 135, 142-143 [La. Ct. App.]; 11 Am. Jur., Constitutional Law, § 72, p. 689, and cases there cited).”
Invoking the presumption that constitutional provisions are self-executing, particularly where they contain operational details, it would seem that section 12 of article I of the Constitution is viable and self-operative. The specific details contained in that provision clearly indicate that it was not intended merely as a declaration of principles which would be subject to the condition precedent of implementation by enabling legis *166 lation. If that were not the case, and if implementation by law were thought necessary, the drafters of the Constitution doubtless would have provided generally “ against unreasonable interception of telephone and telephonic communications ” with a specific provision for enabling legislation. Instead the drafters saw fit to detail the factors required for an interception order, namely: “ reasonable ground to believe that evidence of crime may be thus obtained, and identifying the particular means of communication, and particularly describing the person or persons whose communications are to be intercepted and the purposes thereof.” An additional indication of the self-executing property of the constitutional provision may be drawn from the fact that from January 1,1939, when the Constitution became effective, until the enactment of section 813-a in 1942, no implementing legislation existed. During that interim period many wiretap orders were signed by the courts under the belief that the constitutional provision was self-operative. In fact, in a memorandum to the Governor by his Assistant Counsel with reference to the bill which eventually became section 813-a of the Code of Criminal Procedure, dated May 18, 1942, it was said: “ Since the adoption of the constitutional amendment, thousands of ex parte orders have been obtained to tap wires. No statute was enacted to provide any definite machinery for the procuring of an ex parte wiretapping order. The district attorneys and the courts throughout the State have interpreted the constitutional provision as being self-executing.”
If it be contended that section 12 of article I of the Constitution does not .set forth, in extenso, all the requirements needed for a constitutionally valid wiretap order, the short answer is that reliance can be placed on the presumption that the courts, in carrying out State constitutional mandates, will do so with full awareness and recognition of all Federal due process requirements. In the Carroll case (3 N Y 2d 686, supra) which dealt with another article of the New York State Constitution, in answer to the contention that the questioned provision could not be deemed self-executing and self-operative because it lacked sufficient procedural detail, the court said (p. 692): ‘ ‘ Appellant’s principal objection to the conclusion reached is that sufficient procedural detail has not been supplied by the Constitution and that so much has been left unprovided for by that section in application it would lead to £ chaotic individuality ’. We disagree. The basic and necessary procedural requirements have been provided. Whatever other questions arise can be competently handled by our courts until such time as the Legis- *167 Jature, pursuant, to its constitutional permission, assumes to act. ‘ The fact that a right granted hy a constihitional provision may he hotter or further protected hy supplementary legislation does not of itself prevent the provision in question from being self-executing \” (Emphasis supplied.)
In People v. Grossman (20 N Y 2d 346, 349) the court, citing and relying on Berger, reversed a conviction which rested on eavesdropping by trespass (not wiretapping) and said: “Of course, the statute now having been held invalid, as violative of the Fourth Amendment of the Federal Constitution, it is as if there had never been any valid authority for the police to act as they did.”
Despite this explicit holding I am of the opinion that it is not a determinative pronouncement on the fact situation here presented. Grossman was argued in the Court of Appeals on May 31, 1967. An examination of the record and briefs in that case reveals that the question of the self-executing nature of the New York constitutional provision governing wire-tapping and eavesdropping was neither presented to nor argued in any way in the Court of Appeals. That is quite understandable when it is noted that Berger was decided on June 12, 1967, after Grossman had been argued and the decision in Grossman was not handed down until July 7,1967. Consequently the Court of Appeals did not consider nor pass upon the proposition that absent section 813-a a valid order could have issued under the self-executing quality of the New York State constitutional provision if the guidelines set down in Berger were followed.
In view of the foregoing I have come to the conclusion that despite the holdings in Berger and Grossman declaring section 813-a of the Code of Criminal Procedure unconstitutional, (at least so far as eavesdropping by trespass is concerned, which was the situation in both cases), section 12 of article I of the New York State Constitution remains in full force and effect and may serve as a basis for a constitutionally valid wiretap order if the guidelines set down in Berger are contained in the papers upon which it is granted.
In this case the affirmation and affidavit submitted in support of the proposed wiretap order fully comply with the Berger requirements. They show (1) that a reliable informant, upon whose information arrests have been made which resulted in “large seizures of illegal narcotics,” has given the police specific and detailed information regarding the person whose telephone is sought to be intercepted; (2) that while the person whose phone is sought to be intercepted could be arrested upon the basis of such information from the informant and inde *168 pendent "observations of the affiant set forth in his affidavit, the interest of the People of the State of New York will best be served not by the immediate arrest wherein an unknown quantity of narcotics will be seized but by the seizure of a large shipment of heroin and, more importantly, the source of such narcotics and method of distribution will be uncovered; (3) that the communications sought by the wiretap order are those of such person with regard to the sale and delivery of narcotics; (4) that the information sought cannot be obtained in any other manner; (5) that there are special circumstances, which are set forth in detail, showing that it is reasonable that the order continue for 20 days. In further compliance with the guidelines set down in Berger, the wiretap order herein will provide, among other things, (1) that the interception of telephone conversations shall terminate twenty days after the installation of the wiretap or upon obtaining the evidence sought, tohichever is sooner; (2) that upon the installation of the wiretap a return is to be filed with me within 72 hours, specifying the time and circumstances of such installation; (3) that upon the termination of the interceptions a sworn return be filed with me stating the time and circumstances of such termination, together with the tapes and/or recordings of all telephone conversations obtained by the interceptions; (4) that there be no trespass to any property rights enjoyed by the person whose conversations are sought in effecting the telephonic interceptions; and (5) that notice of the execution of the order to the subscriber of the telephone is dispensed with, the reasons therefor being obvious.
Concluding, as I have, that a wiretap order may constitutionally issue, given the required evidentiary basis, the court is signing the order submitted by the District Attorney authorizing the placing of a wiretap on and the interception of telephone communications over the telephone therein specified.