112 N.J. Super. 48 (1970)
270 A.2d 306
STATE OF NEW JERSEY, PLAINTIFF,
v.
WILLIAM A. CHRISTY, DEFENDANT.
Superior Court of New Jersey, Essex County Court, Law Division  Criminal.
Decided October 23, 1970.
*52 Mr. John A. Matthews, III, Assistant Prosecutor, appeared for plaintiff (Mr. Joseph P. Lordi, Prosecutor of Essex County, attorney).
Mr. Harvey Weissbard, appeared for defendant (Messrs. Querques. Isles and Weissbard, attorneys).
HANDLER, J.S.C. (temporarily assigned).
Defendant William A. Christy, a/k/a Wally, has been charged in three indictments with bookmaking, working for a lottery and conspiracy to violate the laws pertaining to lottery. Thirteen other persons were similarly indicted. Defendant has brought a motion to suppress certain evidence seized as a result of a search and to suppress oral communications obtained as a result of a telephone wiretap.
A sworn written application for an order to intercept telephonic communications was submitted to the Essex County assignment Judge by a lieutenant in the Essex County Prosecutor's office on January 29, 1970. This affidavit described a suspected gambling conspiracy being directed and coordinated by certain named individuals at a specific location at which a particular telephone was being used. On that same date a wiretap order was issued and a wiretap was conducted between January 30 and February 16, 1970. Conversations relating to this particular defendant were intercepted on February 2, 10, 11, 13 and 14, 1970. Utilizing this information, an affidavit for a search warrant was presented and a warrant was issued and executed on February 17, 1970, resulting in the seizure of evidence.
Defendant contends generally that the order authorizing the telephone wiretap was invalid and that the search warrant *53 for the premises was similarly invalid since it was based upon the results of the wiretap. He urges three main grounds in his attack upon the legality of the wiretap: (1) the statute under which the wiretap was authorized, the New Jersey Wiretapping and Electronic Surveillance Control Act, L. 1968, c. 409 (N.J.S.A. 2A:156A-1 et seq.) is unconstitutional; (2) the act is unconstitutional as applied in this case because the order issued pursuant thereto was not sufficiently limited, and (3) the application submitted for the wiretap authorization failed to disclose probable cause therefor.

I
Prior to the passage of the New Jersey Wiretapping and Electronic Surveillance Control Act in 1968, it was a misdemeanor for any person to tap a telephone line belonging to any other person or to disclose any communication thus obtained. N.J.S.A. 2A:146-1, repealed L. 1968, c. 409. With the adoption of the comprehensive wiretap legislation effective January 1, 1969, the earlier prohibition of all wiretapping was repealed and replaced by detailed provisions envisioning official electronic eavesdropping and wiretapping to be carried out by specially trained law enforcement officers under judicial supervision. These significant changes in New Jersey law closely paralleled and followed a similar modification in federal law, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq. The federal statute was a direct response to two landmark cases decided by the United States Supreme Court in 1967, Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040, and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, each reversing a conviction based upon evidence derived from official eavesdropping.
Berger and Katz together have sketched the boundaries within which wiretapping or eavesdropping by governmental *54 authorities may be constitutionally permissible.[1] Both cases were decided shortly after the report of the President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society (1967), recommended the carefully controlled employment of modern surveillance techniques to combat the menace of organized crime. Congress responded by quick enactment of the Ominbus Act. This enactment sought to avoid the constitutional deficiencies which the Supreme Court emphasized in Berger and Katz. It provided a legal framework for judicial authorization of federal eavesdropping and imposed minimum federal standards for any state legislation authorizing eavesdropping by state officers. See 18 U.S.C. § 2516(2) and 18 U.S.C. § 2518. The New Jersey wiretapping statute, N.J.S.A. 2A:156A-1 et seq., is patterned after the federal model.
Defendant bottoms his attack upon the failure of the New Jersey act to measure up to the standards in Berger. In Berger an investigation following a complaint made to the district attorney's office implicated an attorney in a conspiracy to obtain liquor licenses by bribing New York Liquor Authority officials. The New York court sanctioned the bugging of the attorney's office for a 60-day period in accordance with the New York statute empowering judges to issue eavesdrop orders. As a result of leads derived from this eavesdrop, a second 60-day order was issued authorizing the placement of a recording device in the office of another alleged participant in the bribery conspiracy. Solely on the basis of evidence obtained through the concealed microphones, Berger was charged with complicity in the graft *55 scheme. The court in Berger isolated several infirmities in the New York statute which led to its conclusion of constitutional invalidity. Basically, the court found the New York statute to be defective because (1) it failed to require a description of a particular crime that has been or is being committed; (2) it failed to contain any requirement that the conversations sought be particularly described; (3) it failed to make provision for a showing of special facts or exigent circumstances; (4) it imposed inadequate limitations on the eavesdropping time period, and (5) it failed to provide for a return on the warrant.[2]
Defendant does not argue that all of the deficiencies underscored in Berger infect the New Jersey Wiretapping and Electronic Surveillance Control Act. Thus, the New Jersey statute specifically designates certain offenses to which it is applicable (section 8). It also requires that there be a description of the communications to be seized and provides that there be a showing of particular facts or special need (sections 9, 10 and 11), including a showing that other investigative procedures are or will be unsuccessful or dangerous (section 9(c)(6)). Another constitutional defect noted by the Court in Berger was that under the New York statute an extension of the original period could be obtained with only a perfunctory showing of continuing need. This defect has been repaired in the New Jersey act by sections 9(d) and 12 which together require that before a judge can issue an order extending the eavesdropping period, he must consider the results, if any, theretofore obtained and treat the application as if it were an initial request for permission to wiretap. The New York statute failed to provide for a return on the warrant after the eavesdropping had been completed. This defect has *56 been largely remedied by provisions that applications, orders and recorded communications be sealed (sections 14 and 15), and that an "inventory" consisting of notice of the eavesdropping order, the period during which it was executed and whether communications were overheard must be served upon persons affected thereby within 90 days after the termination of the order. Provision is also made for disclosures by way of discovery (section 16).
Although the court in Berger discusses the Fourth Amendment's insistence upon particularity of the "persons * * * to be seized" (388 U.S. at 56, 87 S.Ct. at 1882, 18 L.Ed.2d at 1050), it did not find any violation of this provision since the New York statute required, as does the New Jersey act, the naming of the parties whose conversations are going to be intercepted.[3]Berger, however, did indicate that the New York statute was too indiscriminate because it would permit eavesdropping upon the conversations of any persons who might come within the ambit of surveillance. The New Jersey act requires that the interception of nonsubject communications be minimized or avoided (section 12(f)) and that a wiretap of public facilities or those involving privileged relationships can only be authorized upon a showing of "special need" (section 11).
The focus of defendant's constitutional attack is upon the duration of the wiretapping period that could be permitted under the statute. Section 9(c) (5) provides that an application for a wiretap order must contain:
A statement of the period of time for which the interception is required to be maintained; if the character of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular statement of facts establising probable cause to believe that additional communications of the same type will occur thereafter; * * *.
*57 Section 12(f) requires that a wiretap order provide:
The period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained.
No order entered under this section shall authorize the interception of any wire or oral communication for a period of time in excess of that necessary under the circumstances. Every order entered under this section shall require that such interception begin and terminate as soon as practicable and be conducted in such a manner as to minimize or eliminate the interception of such communications not otherwise subject to interception under this act. In no case shall an order entered under this section authorize the interception of wire or oral communications for any period exceeding 30 days. * * *
Defendant stresses that the statute, which permits an electronic surveillance for as long as 30 days without the necessity of securing additional authorization from the court during this period, is unconstitutional. Reliance is placed on Berger's emphatic disapproval of the provisions of the New York statute allowing a continuous eavesdropping for 60 days, as well as the absence of a termination once the officer had obtained the incriminating conversation. Berger strongly suggests that the sole fact that an electronic surveillance could be authorized for a period of 60 days was tantamount to permitting a series of intrusions, searches and seizures upon only one initial showing of probable cause and was therefore unreasonable. It should be pointed out, however, that the New York statute was apparently applied or construed by the state court as authorizing such a blanket surveillance of 60 days.[4] The Supreme Court in Berger contrasted *58 this blanket permissiveness of the New York statute to intercept any and all conversations at any time during an entire two-month period with the sharply circumscribed intrusions exemplified in the earlier case of Osborn v. United States, 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966). There, without any statutory authority whatsoever, two federal judges approved the placement of a bugging device on a witness in order to determine the truth of an accusation that jurors were being bribed. The bugging in Osborn was considered constitutionally acceptable because it involved only "one limited intrusion rather than a series or a continuous surveillance" and was conducted "with dispatch, not over a prolonged and extended period." The search was regarded as having been authorized "`under the most precise and discriminate circumstances * * *.'" Berger v. State of New York, supra, 388 U.S. at 56, 87 S.Ct. at 1882, 18 L.Ed.2d at 1051.
Also explicative of the Supreme Court's view that an electronic surveillance must be sharply circumscribed is its decision in Katz. Federal agents utilizing information and their own observations concluded that a defendant was making illegal use of a public telephone at particular times during the day. They installed a listening device so that the defendant's conversations could be overheard and recorded. Under these circumstances only the remarks of defendant himself were intercepted. The court, while suppressing the evidential fruits of this search because of the failure to obtain a warrant therefor, nevertheless stated with approval that the surveillance was "narrowly circumscribed," a "precise intrusion," a "very limited search and seizure." 389 U.S. at 354, 88 S.Ct. at 513, 19 L.Ed.2d at 584.
*59 The New Jersey act has incorporated certain standards to curtail the duration of an interception. Thus, the relevant portion of the New York statute provided "[a]ny such order shall be effective for the time specified therein but not for a period of more than two months unless extended or renewed * * *." The New Jersey statute also provides that the time period must be specified (sections 9c(5) and 12 (f)). But it further provides that no order may authorize interception "for a period of time in excess of that necessary under the circumstances"; that the interception must "begin and terminate as soon as practicable," and that in any event the period of the interception cannot exceed 30 days (section 12(f)). Moreover, if an interception is to continue beyond the time that the described type of communication has been first obtained, the application for the court order must include "a particular statement of facts establishing probable cause to believe that additional communications of the same type will occur thereafter" (section 9c(5)), and the order itself must contain "a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained" (section 12(f)).
Thus, the duration of an interception must itself be limited to what is "necessary under the circumstances." It has been suggested that this phrase is vague and indefinite. The term "necessary" is a flexible and relative concept. It is infused with substantive content by the basic statute and imports what is convenient, useful, appropriate, suitable, proper or conducive to the end sought, as expressed in the operative enactment. Cf. Herrick v. Maine, 159 Me. 499, 196 A.2d 101, 104 (Sup. Jud. Ct. 1963). When the statute speaks in terms of necessity it conveys the directive that the wiretapping may be authorized only for that period of time which the issuing judge determines is required to uncover incriminating or guilty conversations concerning particular criminal activities and participants. This may require a greater or lesser time, depending upon all of the circumstances. But in no event may wiretapping be authorized *60 initially for longer than 30 days, regardless of the necessity for more time. The 30-day period provided in the New Jersey statute is not to be construed as blanket authorization for a continuous, unremitting surveillance of that duration. It may be appropriate only if the essential criterion of the statute be met, that is, whether it can be shown that a wiretap of 30 days is "necessary under the circumstances." Moreover, any wiretapping which is authorized must be initiated "as soon as practicable." This is to avoid the danger that the circumstances originally disclosed to show probable cause may change or become stale before the execution of a wiretap order. In this statutory context, the provision that a wiretap could be authorized for as long as 30 days should not be deemed unconstitutional. To so hold would enshrine a numerical formula into constitutional dogma and prescribe categorically, as a matter of constitutional stricture, that necessity for a 30-day wiretap could never be shown or justified.
The provision that an interception may continue beyond the time that the described type of communication has been first obtained (section 12(f)) is not constitutionally invalid. Such a continuation is permissible only if the issuing judge is satisfied from "a particular statement of facts establishing probable cause * * * that additional communications of the same type will occur thereafter" (section 9c(5)).
Bubis v. United States, 384 F.2d 643 (9 Cir.1967), does not dictate a contrary conclusion. In that case the court determined that a wiretap involving calls made by a telephone subscriber suspected of defrauding the telephone company was continued long after adequate incriminating evidence establishing the commission of the crime had been received. The sense of the New Jersey provision is not to sanction this practice, that is, the continued interception of conversations the contents of which would merely be unduly redundant or cumulative of earlier disclosures, but rather to extend interceptions where there is a well-founded promise of fresh evidence. If an initial communication, for example, is cryptic *61 or equivocal, or does not identify or inculpate all participants, or does not disclose the full nature or extent of a manifold criminal operation, and there is probable cause to believe that additional communications will furnish such further evidential essentials, under those circumstances the wiretap may be authorized beyond the interception of an initial conversation. The provision in the New Jersey statute which permits the continuation of a wiretap after the described communication has been obtained was intended to permit the continuation of an interception of "additional conversations of the same type" only if there is probable cause to believe that the reception of such additional conversations is needed to secure sufficient evidence to establish crime.
In sum, with respect to the duration of a permissible intercept, the New Jersey statute requires that it shall begin promptly, that is, "as soon as practicable." It shall be terminated upon the first or earliest occurrence of any one of the following events: (1) when the described communication has been first obtained; (2) as soon as all incriminatory conversations have been collected; (3) the expiration of the time specified in the order, or (4) the expiration of 30 days. In no event can a surveillance be authorized longer than "necessary under the circumstances," and it must be terminated "as soon as practicable."
In conclusion, the New Jersey Wiretapping and Electronic Surveillance Control Act, N.J.S.A. 2A:156A-1 et seq., is constitutional. It has been drawn to rectify each essential constitutional vice delineated by the Supreme Court in Berger v. New York, supra. It provides for a sufficient description of particular crimes, persons, conversations and facilities to which it can be applied. It insures adequate protection for persons who might be affected by the results of an electronic surveillance, by its provisions for avoiding and minimizing unauthorized interceptions and for the sealing, notice and limited disclosure of the results of a surveillance after it has been completed. Most importantly, it requires a particular factual showing for the necessity or special need to *62 utilize electronic surveillance, including the futility of normal investigative measures. The duration of any intrusion is limited in all cases to that which is shown to be necessary under the circumstances. In no event can this exceed initially a 30-day period. Any interceptions must be confined and circumscribed to the collection of communications only as long as they are productive of meaningful evidence of crime.

II
The defendant contends that the affidavit constituting the application for the wiretap is unconstitutional in that it fails to establish probable cause. An analysis of the statutory as well as constitutional sufficiency of the affidavit is invited.

(A)
The contents required by the statute to be included in an application are listed in section 9. Subsection (c) requires a "particular statement of the facts relied upon by the applicant." The first item of factual information is "[t]he identity of the particular person, if known, committing the offense and whose communications are to be intercepted."
The affidavit states that the "investigation has revealed that the individuals committing the offenses specified hereinabove and whose communications are to be intercepted are Anthony Rotunda and Frank Cerino and other unknown males engaging in a bookmaking and lottery operation." The affidavit sets forth that a "very reliable" informant "states he observed a white male, known to him as Frank Cerino, at this location and on several occasions has answered the telephone," and he "believes a white male named Anthony Rotunda is in charge of the operation and that he answers most of the telephone calls." To corroborate the accuracy of this tip, the affidavit discloses a stakeout of the premises in Newark was conducted by the Essex County Prosecutor's office on January 7, 8 and 9, and also on January *63 24, 26 and 27, 1970. Anthony Rotunda, Frank Cerino, and one Joseph Sarrecchia, all of whom had past records of gambling law violations, were observed frequenting the suspected location, and "many persons were observed to enter the location and have short conversations with Anthony Rotunda and Frank Cerino, stay a short period of time, and then leave said premises."
Further particularization called for by the statute is "[t]he character and location of the particular wire communication facilities involved" and "[t]he details as to the particular offense that has been, is being, or is about to be committed" and "[t]he particular type of communication to be intercepted."
The affidavit states that "[t]he wire communication facility involved is telephone number XXX-XXX-XXXX listed to Duval's Home Improvement, 480 Broadway, Newark, New Jersey." The affiant recites that he is engaged in investigating alleged offenses of bookmaking contrary to N.J.S.A. 2A:112-3, conspiracy contrary to N.J.S.A. 2A:98-1 and 2, and lottery contrary to N.J.S.A. 2A:121-3. He states that an informant has told his department that "calls are being made to [a particular telephone] number by pickup men to enable them to ascertain the times and locations where the lottery pickups are to be made," and also that "the times and locations of these pickups are being [sic] changed on a daily basis," and that "individuals at this level generally will conduct their business by telephone to avoid contact with bettors or other operators working in the gambling operation which can be detected by surveillances." As previously noted, steps were taken by the prosecutor's office to verify these accusations. Based on this information, observations and experience, the affiant expressed his belief that "[t]he aforementioned location is being used to conduct an illegal gaming operation in that telephonic conversations are being carried on by the controllers to coordinate the activities of policywriters, runners, and pickup men engaged in this operation."
*64 The fifth item required by the statute involves the duration of the wiretap. Permission was sought in this instance to maintain the wiretap for a period of 30 days, the maximum time allowable under the statute. Additionally, a request was made that interception be authorized to continue beyond the time after which the described type of communication has been first obtained. The affiant expressed the opinion that "bookmaking and lottery and horse racing is a continuing criminal activity," an analysis unavoidable based in part on the affiant's knowledge and experience. The affidavit indicates the existence of an elaborate and furtive criminal enterprise involving many persons whose daily movements were being coordinated and changed constantly by telephone. Certainly many continuing telephone conversations relating to the illicit operation could be anticipated.
The request for the maximum interception of 30 days involving more than initial communications is further supported by the recitation responsive to the sixth required factual item, namely, "[a] particular statement of facts showing that other normal investigative procedures with respect to the offense have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous to employ." The affidavit strongly indicates that the amount of additional useful information obtainable by usual investigative procedures would be limited and that any continued visual observations by officers would abort the investigation. The affidavit recites that "any sustained surveillance is impossible, because a strange vehicle parked in the neighborhood or a strange individual on foot would be noticed and the security of the investigation would be jeopardized." The affiant further states that "because of the magnitude of the illegal operation and the furtive and surreptitious manner in which * * * [it] is carried out," law enforcement officials will be unable to get a detailed picture of the names of every participant in the alleged gambling ring and their degree of involvement unless *65 the court will permit wiretapping which might "reveal the substance of discussions between the unknown individuals and bettors in the wagering enterprise." The affidavit includes the additional statement that "it would be impossible to successfully execute a search warrant for the premises because of the inherent suspiciousness of the persons involved."
Section 11 provides that if the phone to be tapped is public, the issuing judge must make an additional finding that there is "special need" for interception of wire communications. There is some indication from the affidavit and also from oral argument that the telephone involved was public. While the statute contains no definition, "special need" is something "in addition to the matters provided in section 10 * * *," which section encompasses the basic determination of probable cause. Several factors which justifiably could serve as the basis for a determination that a special need existed in the present case were the impracticability of continuing visual surveillance, the need for learning the daily pattern of activity within the operation and ascertaining the identities of all the participants, the fact that the telephone was pivotal in the criminal conspiracy, and most pointedly, the fact that the particular phone, though public, was installed within the confines of a private business estabilshment, apparently controlled by the criminal suspects Rotunda and Cerino and not readily available to the general public.
The affidavit submitted herein comports with all the essential statutory requisites. It recites with adequate specificity the nature of the suspected crimes, the identity of known participants, the location of the facility to be tapped, the types of conversations to be intercepted, the period of time necessary to conduct the interceptions as well as the investigatory need for obtaining more than initial conversations, and generally the necessity and special need to intercept communications over the particular facility including *66 facts showing that conventional investigative attempts would be unavailing.

(B)
Defendant mounts his most forceful attack against the affidavit upon constitutional grounds. He contends that the affidavit did not present probable cause for the issuance of a wiretap order. Defendant relies upon Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and their progeny.
Spinelli v. United States outlines the criteria which must be considered when probable cause for a search warrant is founded upon a composite of an informer's tip and independent investigations. Although Spinelli involved probable cause for the issuance of a search warrant rather than an order authorizing a wiretap, these standards a fortiori must guide the court in considering the potentially greater interference with Fourth Amendment rights inherent in the use of modern electronic eavesdropping techniques. Even prior to the Berger decision it had been noted that wiretap orders should issue only when the need was "extraordinary." Note, "Eavesdropping and the Fourth Amendment," 66 Colum. L. Rev. 355, 375 (1966). Berger itself made it clear that a higher standard of probable cause is required in wiretap cases. "The Supreme Court, 1967 Term," 82 Harv. L. Rev. 63, 196, fn. 37.
In Berger, the court said:
The need for particularity and evidence of reliability in the showing required when judicial authorization of a search is sought is especially great in the case of eavesdropping. By its very nature eavesdropping involves an intrusion on privacy that is broad in scope. [388 U.S. at 56, 87 S.Ct. at 1882, 18 L.Ed.2d at 1050-1051].
This view was expressed by Mr. Justice Stewart in his concurring opinion (388 U.S. at 69, 87 S.Ct. at 1888, 18 *67 L.Ed.2d at 1058) and by Mr. Justice Harlan in his dissent (388 U.S. at 93, 87 S.Ct. at 1901, 18 L.Ed.2d at 1072). It is to be pointed out, however, that in stressing the need for a strong showing of probable cause, the court in Berger stated that the New York statute itself lacked any requirement for particularization as to the specific crime, place, persons or things which were the objects of the search and seizure. 388 U.S. at 55-56, 87 S.Ct. at 1882, 18 L.Ed.2d at 1050. In contrast, as elucidated earlier, the New Jersey statute requires such particularization of specific crime, place, facility, communications and persons as was lacking in the New York law. Moreover, the affidavit herein treats each of these matters required by statute to be particularized. The precise inquiry, therefore, is whether the affidavit can be construed, not merely to have recited these factual essentials, but to have established them in a probative sense. If such facts are sufficiently founded, this would satisfy the constitutional standard that there be the strongest type of particularized showing which is requisite for an eavesdropping authorization.
Spinelli involved a prosecution under a federal statute making it a crime to travel interstate with the intent to conduct gambling activities in violation of state law. The Supreme Court held the affidavit submitted for a search warrant consisting of an informer's tip and data which might lend credence to it fell short of the quantum of proof necessary for establishing probable cause. This conclusion was based mainly on the omission in the affidavit of any justification for relying on the informant's tip and on the lack of any direct concrete proof of illegality. Spinelli elaborated upon standards expressed earlier in Aguilar v. Texas, supra. In Aguilar the affidavit for the issuance of a warrant to search for narcotics was found to be inadequate on two grounds. It did not give the "underlying circumstances" so that the magistrate could evaluate the conclusion supplied by the informant. Also, the officers did not provide any reason for crediting their faith in the reliability of the informant. *68 Spinelli v. United States, supra, 393 U.S. at 412-413, 89 S.Ct. at 587, 21 L.Ed.2d at 641-642.
Turning to the affidavit in the present case, the affiant stated his reasons for believing that the informant's tip was trustworthy. Put simply, information furnished by this informant "has resulted in arrests and convictions in the past." This statement may be contrasted to the affidavits in Aguilar and Spinelli where no basis whatsoever was given for crediting the informants' reports. It should also be pointed out that hearsay in an affidavit is not fatal. Aguilar v. Texas, supra, 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729; Jones v. United States, 362 U.S. 257, 270-271, 80 S.Ct. 725, 735-736, 4 L.Ed.2d 697, 708 (1960). Such hearsay, however, must itself be inherently credible. State v. Kasabucki, 52 N.J. 110, 117 (1968); State v. Burrachio, 39 N.J. 272, 275 (1963). Moreover, the hearsay should not be attenuated or merely hearsay upon hearsay. Examination of the affidavit herein persuades this court that the hearsay has not been compounded and that the informant spoke from personal knowledge. The affidavit expressly sets forth that the informant told authorities he "observed a white male, known to him as Frank Cerino" answering the telephone at Duval's Home Improvement Company. (Emphasis added.) This assertion is buttressed by the informant's revelation that this telephone was being used to coordinate lottery pickups, the times and locations of which were rotated daily. Additionally, the informant expressed his belief that the entire operation was supervised by Anthony Rotunda and that he answers most of the phone calls. From the statement as to his actual observation and the specific details he revealed, the issuing judge could reasonably infer that the informant was directly familiar with the occurrences he was describing and privy to information which would not be known by persons who were not in some way closely associated with the gambling enterprise.
Spinelli further directs that the court should consider the results of any independent investigation which might tend *69 to establish or corroborate the accusations made by the informant or, at the very least, confirm enough of what the informant has disclosed so that the balance of his disclosures are invested with an aura of credit. Such partial corroboration will not resuscitate the tip of an informer not otherwise established as trustworthy and reliable. State v. Ratushny, 82 N.J. Super. 499, 504 (App. Div. 1964). But, corroboration may gather added weight to information from an otherwise credible source. Spinelli v. United States, supra, 393 U.S. at 415-416, 89 S.Ct. at 588-589, 21 L.Ed.2d at 643. In this case, observations of the premises by an undercover detective substantiated some of the rudiments of the informant's story. On each of six days Anthony Rotunda and Frank Cerino, who had been identified by the informer, and Joseph Sarrecchia were seen frequenting the location. Many persons were observed entering the suspected premises, engaging in brief conversations with Anthony Rotunda and Frank Cerino, and then leaving shortly thereafter. This single bit of information by itself would not be enough to raise any suspicion of wrongdoing. When juxtaposed with the other factors recited in the affidavit, however, a judge might pause to wonder how a rapid succession of short conversations with numerous people could further the legitimate business interests of an establishment whose name suggests the wholesome activity of adding improvements to homes.
Another factor entitled to some weight was the record of recent arrests for gambling offenses committed by Rotunda, Cerino and Sarrecchia, who was also recently convicted of gambling. State v. Boiardo, 111 N.J. Super. 219 (App. Div. 1970). In Spinelli the court characterized the affiant's accusation that defendant had a general reputation as a gambler as merely "a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision." 393 U.S. at 414, 80 S.Ct. at 588, 21 L.Ed.2d at 643. Arguably, a record of prior arrests (as distinguished from actual convictions) might be similarly treated. Prior arrests standing alone would not be enough *70 to cast doubts on behavior which might otherwise have an unsuspicious and ordinary cast. It is unrealistic to say, however, that a past history of recent arrests for offenses similar to the one believed to be currently occurring should have no bearing upon the quest for probable cause. It is a remarkable coincidence worthy of attention that the three individuals, who were seen to congregate regularly at a location pinpointed by an informant as the headquarters of a gambling operation, had a common background of recent arrests for gambling. Although such arrests could hardly be dispositive of the issue of probable cause, the issuing judge was entitled to give some weight to this piece of information.
This court is mindful of the line of federal cases cited by defendant, typified by the recent case of United States v. Manetti, 309 F. Supp. 174 (D. Del. 1970), which have applied the Aguilar-Spinelli tests. E.g., United States ex rel. De Negris v. Menser, 247 F. Supp. 826 (D. Conn. 1965), aff'd 360 F.2d 199 (2 Cir.1966); Travis v. United States, 362 F.2d 477 (9 Cir.1966), cert. den. 385 U.S. 885, 87 S.Ct. 179, 17 L.Ed.2d 113 (1966); United States v. Roth, 391 F.2d 507 (7 Cir.1968); United States ex rel. Palladino v. Gable, 281 F. Supp. 69 (E.D. Pa. 1968); United States v. Delia, 283 F. Supp. 470 (E.D. Pa. 1968); United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209 (2 Cir.1967); United States v. Whitlow, 339 F.2d 975 (7 Cir.1964). In Manetti the court suppressed evidence seized pursuant to search warrants relating to an alleged interstate gambling operation. The affidavit, despite its superficial thoroughness, was rejected because no reason was expressed for the conclusion that the informants were reliable and the independent investigation verified only two minor details of the informants' reports, neither of which was deemed sufficiently substantial to rescue the affidavit.
The predilection manifested by some federal courts to apply Aguilar-Spinelli with exacting literalness and rigidity is not shared by the New Jersey Supreme Court. In State *71 v. Kasabucki, supra, the New Jersey Supreme Court has articulated in crystal-clear terms the attitude to be followed by a trial court in dealing with affidavits in connection with applications for search warrants or on motions to suppress evidence.
* * * [T]he affidavits presented to the court on the application should not be examined with a hypertechnical eye. The approach must be a practical and commonsense one. It must be engaged in with a consciousness that bookmaking operations are carried on cautiously, furtively and deceptively, and by as many camouflages as human ingenuity can devise. * * * The consideration cannot be a grudging one. * * * [52 N.J. at 120; citation omitted]
This court is constrained to follow the bent of its highest court.
The signal difference between the judicial attitude exemplified in Manetti and the approach binding on this court in compliance with Kasabucki is not so much one of principle but essentially the weight to be accorded various statements made in the affidavit. Manetti would attribute minimal significance to an informant's past reliability. This court regards prior accuracy as germane to the issue of the credibility of the informant and the reliability of his current statements. Another departure concerns the worth of independently obtained corroborative evidence. Manetti did not find such evidence sufficiently persuasive to generate an inference that the accusations of an informant were true. This court feels the independent investigation herein buttressed enough of the informant's report to dispel doubts which may have existed as to the accuracy of his accusations. A further aspect of some significance is the experience and expertise of the officer to interpret the information he has received and to reach a reasoned and well-founded conclusion as to whether and what kind of criminal activity is transpiring. Manetti dwells on this not at all. Our court in Kasabucki, however, has stated that:
* * * [T]he judge should take into account the specialized experience and work-a-day knowledge of policemen. State v. Contursi, *72 44 N.J. 422, 431 (1965). The facts asserted must be tested by the practical considerations of everyday life on which reasonably prudent and experienced police officers act. Brinegar v. United States, supra, 338 U.S. 160, at p. 175, 69 S.Ct. 1302, 93 L.Ed. 1879, at p. 1890. [52 N.J. at 117.]
And elsewhere,
* * * [t]he consideration [of an affidavit of probable cause for a search warrant] cannot be a grudging one. Such an attitude would give no weight to the good faith of the police officer in seeking judicial sanction for the search * * * [and] would probably result in failure to take into account a significant factor, i.e., the officer's experience with bookmaking activities and the factual indications of them. [Id. at 120].[5]
Still another consideration moves this court. In assessing the showing of probable cause upon a motion to suppress, a trial court should not lightly second-guess the determination made by the issuing judge. State v. Kasabucki, supra; State v. Kuznitz, 105 N.J. Super. 33 (Cty. Ct. 1969). Rather, its sole function is to re-examine the record for the purpose of assuring that there were sufficient facts upon which the issuing judge could posit his finding of probable cause. Expressed in Kasabucki,
* * * Once the judge has made a finding of probable cause on the proof submitted and issued the search warrant, a reviewing court, especially a trial court, should pay substantial deference to his determination. In fact, another trial judge of equal jurisdiction should regard as binding the decision of his brother that probable cause has been sufficiently shown to support a warrant, unless there was clearly no justification for that conclusion. State v. Tanzola, 83 N.J. Super. 40, 43 (App. Div. 1964). [52 N.J. at 117].
This directive is especially apposite in a proceeding at the trial level involving the re-evaluation of an application *73 for an order authorizing a wiretap. Under section 2(i) of the New Jersey act, only those judges of the Superior Court designated by the Chief Justice of the New Jersey Supreme Court may entertain applications for orders authorizing interception of wire communications. This undoubtedly reflects the philosophy that the appointed judges would acquire the experience and sensitivity to handle such applications which entails a counterbalance between their manifold potential for abuse and their efficacy for detecting crime. There is the further desideratum of developing judicial consistency and uniformity in the sanctioning of this type of electronic surveillance with its essential thrust against organized or syndicated crime. Cf. State v. De Stasio, 49 N.J. 247 (1967), and State v. Gattling, 95 N.J. Super. 103 (App. Div. 1967). If Kasabucki requires, as it does, "substantial deference" be accorded at the trial level to the issuing judge's decision in an ordinary search warrant case, assuredly this court must render such respect to the determination made by a judge especially appointed by the Chief Justice to receive applications for electronic surveillance.
In summary, the affidavit which constitutes the application herein comports with the requirements of the New Jersey statute. It furnishes in sufficient detail those matters required to be particularized by the New Jersey Wiretapping and Electronic Surveillance Control Act as to specific crimes, persons, places, facilities and type of communications. It further satisfies the overriding constitutional standard that there be a strong evidential demonstration of probable cause for the issuance of the order authorizing the wiretap. The affidavit was a compound of a reliable informant's statements which were inherently trustworthy and accurate, together with direct knowledge obtained through independent investigations which further underscored the accuracy and credibility of the informant's disclosures with the addition of some fresh facts; it also furnished the expert opinion of an experienced police officer specializing in *74 gambling which explained the significance of the information thus obtained. This affidavit disclosed to the issuing judge that there existed a flourishing, on-going conspiratorial gambling operation; that some known and many unknown persons were involved therein; that the conduct of the participants was surreptitious and elusive; that conventional surveillance techniques would not be fruitful, and most importantly, that there was a particular telephone facility which was the fulcrum of the operation and over which there would be continuing conversations that would reveal the identities of those involved and would unfold the scope and magnitude of the criminal conspiracy.

III
Defendant further argues that the statute is unconstitutional as applied in this case. Specifically, he contends that the order is invalid because of overbreadth with respect to its provisions for the duration and termination of the wiretap.
Subsection (f) of section 12 of the New Jersey Wiretapping and Electronic Surveillance Control Act requires mandatory language be included in every order authorizing an interception. Borrowing directly from the statutory language, the order in this case stated that "[m]ore than one communication of the type described hereinabove will occur," and fixed the following time limitation:
[S]aid interception will begin and end as soon as practicable and be conducted in such a way as to minimize or eliminate the interception of communications other than the type described hereinabove; said interception shall terminate no later than thirty days from the beginning of the interception.
It could be suggested that no specific period was fixed by the issuing judge. The order herein would appear to be a correct but ritualistic recitation of minimal statutory language. Such literal reiteration of mandatory statutory language as reflected in this order, without more, tempts *75 the conclusion that the issuing judge did not determine a definite period of time for the duration of the intercept whcih he considered to be reasonable and appropriate under all of the circumstances disclosed to him. While the statute requires the inclusion of certain language in every order, the sense of the statute further demands the fixing of a finite time period for a wiretap. It should be a required practice to specify that exact period of time determined by the issuing judge to be "necessary under the circumstances," whether that period be for 30 days or for any lesser time. This court, however, will not construe the provisions of the present order in a captious manner. Cf. State v. Kasabucki, supra. The order should not be read in vacuo but against the backdrop of the application.
In the application permission was expressly sought to wiretap for 30 days. Particular facts were stated to support this request. The issuing judge made essential findings, as required by the statute, which were based upon the affidavit. The court determined there was probable cause to believe that "Anthony Rotunda and Frank Cerino and other unknown males are engaging over a period of time as a part of a continuing criminal activity in, and are committing, have committed, are about to commit the offenses of Bookmaking (N.J.S.A. 2A:112-3), Lottery (N.J.S.A. 2A:121-3), and Conspiracy (N.J.S.A. 2A:98-1 and 2)"; that "[t]he facilities from which wire communications are to be intercepted [`a telephone facility number XXX-XXX-XXXX, listed to Duval's Home Improvements, 480 Broadway, Newark, New Jersey'] are, have been and are about to be used in connection with the commission of such offenses and are commonly used by unknown males engaging in a bookmaking and lottery enterprise"; that "[c]ommunications evidentiary of such offenses will be obtained * * * and [m]ore than one communication of the type described hereinabove will occur." And further, "[n]ormal investigative procedures with respect to such offenses have been tried and have failed and reasonably appear to be unlikely *76 to succeed if continued," and "[a] special need exists to intercept wire communications over said facilities." Read in this context, the order did in actuality authorize wiretapping for a period of 30 days. By reasonable and necessary inference, this period of time was considered by the court to be "necessary under the circumstances." This determination of the issuing judge was sufficiently founded in the evidential materials furnished in the application and will not be disturbed by this court. Cf. State v. Kasabucki, supra.
There was included in the order the statutory directive that the "interception will begin and end as soon as practicable." Although required by the statute to be included in the order, the defendant argues that this provision for an earlier termination of the wiretap vested complete discretion in the executing officers as to the duration of the wiretap and was therefore too permissive. He relies heavily on People v. Botta, 60 Misc.2d 869, 304 N.Y.S.2d 362 (Cty. Ct. 1969). In that case the court issued an order permitting a wiretap of a certain phone suspected of being used for the placement of bets, for a period of approximately two weeks, with the additional proviso that the wiretap "shall terminate at such time as the conversations sought are recorded." A motion to suppress in Botta was granted because the court felt this language of the order allowed termination of the wiretap "at the pleasure of the police officers" rather than at the direction of the court. It has been demonstrated previously that, as construed, the provision in the New Jersey statute which is incorporated in the implementing order that an "interception will end * * * as soon as practicable" requires the cessation of a wiretap when it is no longer productive of any fresh culpatory conversations. This language is that of limitation, not license. It did not therefore invest the executing officers with unfettered discretion to extend their intrusions beyond that period of time deemed necessary by the issuing judge. Rather, it constituted a restriction on *77 the officers to desist from further intrusions as soon as their evidential quest was completed. Its inclusion in this order consequently reflects an independent judicial determination that a particular period of time, in this case 30 days, was necessary under the circumstances to ascertain the full extent of the criminal activity and the identities of criminal participants, but that if such discovery were accomplished at an earlier time within that period, interceptions should then terminate.
Moreover, under the particular facts in Botta the two-week period provided in the order seems to have been regarded by the court as longer than ncessary under the circumstances, in view of the limited type of criminal transaction which was suspected. This is inferentially suggested by its finding that the officers continued their wiretap for two weeks beyond the time inculpatory conversations were first obtained. This is to be contrasted with the kaleidoscopic and clandestine conspiratorial criminal activity foreshadowed in the present application. Furthermore, there is no contention made by defendant on this motion that the officers exceeded their authority in the execution of the order by continuing their interceptions long after they had reached the point of diminishing evidential returns. Compare Bubis v. United States, supra, (the court characterized as "unreasonable and unnecessary" the continuous recording of all conversations over a phone for a period of three months after the telephone company had uncovered ample evidence of crime).
Defendant further contends that the order failed to limit the daily hours within which the wiretap could be undertaken. In the affidavit it was acknowledged that persons engaged in a gambling enterprise "normally conduct their operations during the hours between 11:00 A.M. and 6:00 P.M." Since the order did not contain any limitation to these critical hours, defendant argues that the issuing judge improperly gave a greater degree of latitude to law enforcement officers than even they had requested. The *78 short answer to this argument is that there is no specific statutory requirement that hours be specified. To the extent that a wiretap can be authorized only so far as "necessary under the circumstances," this language may suggest a limitation to certain hours when appropriate. In light of the statement in the affidavit it might have been preferable to specify an hour limitation in the order. (See R. 3:5-3 wherein it is provided that a regular search warrant shall specify "the hours when it may be executed.") It does not follow, however, that the wiretap order herein must be considered a nullity for that reason. Compare R. 3:5-7(d).
In sum, the New Jersey Wiretapping and Electronic Surveillance Control Act is not unconstitutional as applied in this case insofar as the application of the statute is mirrored in the order authorizing the wiretap. The order provided for a fixed period of time of 30 days within which the wiretap was authorized. The affidavit constituing the application for the order disclosed the existence of a manifold and surreptitious criminal gambling operation involving many unknown participants and in which a particular telephone served as the nexus of the conspiracy. Against this background the 30-day period to conduct a wiretap of this facility was reasonably determined by the issuing judge to be "necessary under the circumstances." The provision in the order for an earlier termination within that period of time did not loosen the time limitation imposed by the court; nor did it grant to the executing officers discretion to overreach or extend the duration of the interception as fixed by the court but rather was designed to reduce the intrusions only to those which were needed to complete the acquisition of sufficient evidence of crime.
For the reasons expressed herein, the motion to suppress evidence is denied.
NOTES
[1] As a result of two more recent cases, it is clear that all forms of modern electronic surveillance encompassing both wiretapping and bugging are governed by the Berger and Katz standards. Kaiser v. New York, 394 U.S. 280, 89 S.Ct. 1044, 22 L.Ed.2d 274 (1969), rehg. den. 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50 (1969); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 rehg. den. 395 U.S. 931, 89 S.Ct. 1766, 23 L.Ed.2d 251 (1969).
[2] Other courts have refined from the Berger decision additional constitutional defects. E.g., Tumminello v. State, 7 Md. App. 380, 256 A.2d 342 (Ct. Sp. App. 1969); Matter of Intercepting Telephone Communications, 55 Misc.2d 163, 284, N.Y.S.2d 431 (Sup. Ct. 1967).
[3] The New Jersey act qualifies its relevant sections by requiring an identification of the person "if known" (sections 9c(1) and 12(b)).
[4] After the decision in Berger v. State of New York, supra, the New York courts permitted wiretapping despite the absence of statutory authorization. Kaiser v. New York, supra, fn. 1; Matter of Intercepting Telephone Communications, supra. fn. 2. The New York Code of Criminal Procedure, by the enactment of L. 1968, c.. 546, sought to incorporate the Berger standards into the New York law. Thereafter, a later statute, L. 1969, c. 1147 subsequently re-enacted in the Code of Criminal Procedure, Art. 700.05 et seq., effective September 1, 1971, attempted to reconcile differences between the 1968 statute and the federal enactment, Title III of the Omnibus Crime Control and Safe Streets Act. Cf. People v. Ruffino, 62 Misc.2d 653, 309 N.Y.S.2d 805 (Sup. Ct. 1970). The current New York enactment, patterned as it is upon the federal model, is entirely comparable in all its essential provisions with the New Jersey Wiretapping and Electronic Surveillance Control Act.
[5] Other federal cases cited by defendant can be distinguished on these various grounds, i.e. reliability of informant not established (Menser, Roth, Gable); information conclusory, ambiguous or based on compounded hearsay (Roth, Whitlow Delin, Warden of Attica, etc.); independent investigations not sufficiently corroborative (Menser, Gable, Warden of Attica, etc.). Travis v. United States, supra, upheld the affidavit for a search warrant.